836 A.2d 821 (2003)
364 N.J. Super. 387
STATE of New Jersey, Plaintiff-Respondent,
v.
Larry L. PETERSON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 2003.
Decided December 10, 2003.
*822 Vanessa Potkin of the New York bar, admitted pro hac vice, argued the cause for appellant (Rutgers University Law School Urban Legal Clinic, attorneys; Ms. Potkin and Marcia Levy, Newark, on the brief).
Kristen M. Harberg, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney; Ms. Harberg, of counsel and on the brief).
*823 Before Judges SKILLMAN, COBURN and WELLS.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
In 2002, the Legislature enacted a statute which provides that a person convicted of a crime who is currently serving a term of imprisonment may obtain DNA testing of evidence probative of guilt or innocence. L. 2001, c. 377; N.J.S.A. 2A:84A-32a. This appeal requires us to interpret two of the conditions a convicted person must establish to obtain such DNA testingthat "the identity of the defendant was a significant issue in the case," N.J.S.A. 2A:84A-32a(d)(3), and that "the requested DNA testing result would raise a reasonable probability that if the results were favorable to the defendant, a motion for a new trial based upon newly discovered evidence would be granted," N.J.S.A. 2A:84A-32a(d)(5).
In March 1989, a jury found defendant guilty of felony murder, in violation of N.J.S.A. 2C:11-3a(3), and four counts of aggravated sexual assault, in violation of N.J.S.A. 2C:14-2a(3) and (6). The trial court sentenced defendant to life imprisonment, with thirty years of parole ineligibility, for felony murder, and a consecutive twenty-year term, with ten years of parole ineligibility, for one count of aggravated sexual assault. The court merged defendant's other convictions.
We affirmed defendant's convictions and sentence in an unreported opinion, State v. Peterson, A-3034-89T4 (Nov. 30, 1992), and the Supreme Court denied his petition for certification, 133 N.J. 433, 627 A.2d 1139 (1993).
In September 1994, defendant filed a petition for post-conviction relief which sought, among other things, an order for DNA testing of evidence the State had introduced at trial. The trial court denied defendant's petition. We affirmed that denial in an unreported opinion, State v. Peterson, A-1072-98T4 (Nov. 13, 2000), and the Supreme Court again denied certification, 167 N.J. 634, 772 A.2d 935 (2001).
In November 2001, defendant brought an action in federal district court under the Civil Rights Act (42 U.S.C.A. § 1983) seeking DNA testing of evidence introduced at his trial. On June 28, 2002, the district court temporarily stayed proceedings pending defendant's application for relief under N.J.S.A. 2A:84-32a in state court.
Defendant then filed a motion in the trial court to obtain DNA testing of the evidence found at the crime scene that had been introduced at trial. After hearing argument by counsel, the trial court concluded that defendant had not established all the conditions for post-conviction DNA testing prescribed by N.J.S.A. 2A:84A-32a, specifically the requirements that identity must have been a "significant issue" at trial, N.J.S.A. 2A:84A-32a(d)(3), and that if the DNA test results were "favorable" to defendant, there would be a "reasonable probability" a motion for new trial would be granted, N.J.S.A. 2A:84A-32a(d)(5). Accordingly, the court entered an order denying defendant's motion, from which this appeal has been taken.
We conclude that identity was a significant issue at defendant's trial and that there is a reasonable probability a motion for new trial would be granted if the results of DNA testing were favorable. Therefore, we reverse the order denying DNA testing and remand to the trial court.
The murder and aggravated sexual assaults for which defendant stands convicted were committed sometime in the early morning hours of August 24, 1987. The victim's body, which was partially nude, was found later that day in a field near an *824 apartment complex in Pemberton Township. An eight-inch-long stick, which had been inserted in the right side of the victim's mouth, protruded through her throat to form a bulge in the back of her neck. Another two-inch-long stick was discovered broken off inside the victim's vagina. The police also found sticks near the body which had strands of the victim's hair attached to them. In addition, the police found blood under the victim's fingernails, semen on the outside of her pants and various hair samples on her body.
After a lengthy investigation, the State charged defendant with the crime. At trial, the State presented strong evidence of defendant's guilt. This evidence included testimony by three persons with whom defendant allegedly rode to work the morning of the murder, who said that defendant described the crime to them in lurid detail only a few hours after it was committed, before the police had released any detailed information to the public. The State also presented the testimony of an inmate in the jail where defendant was incarcerated before trial, to whom defendant allegedly made statements admitting he had committed the crime. In addition, the State presented evidence that shortly after the murder, defendant had fresh scratch marks on his arm that looked like fingernail marks, that he asked several persons for money so he could travel to Germany, and that he threatened several potential witnesses.
Most pertinent to the issue presented by this appeal, the State presented the testimony of Gail Tighe, a senior forensic scientist in the State Police laboratory, who expressed the opinion that seven hairs found at the crime scene had the same characteristics as defendant's hair. Three of those hairs were discovered in the victim's pubic combings, one in the victim's body bag and three on a stick found forty-feet from the body. This stick also had four hairs attached to it that had the same characteristics as the victim's hair. The State did not present any evidence concerning the source of the semen on the victim's pants or the blood under her fingernails. No DNA testing was performed on any of the physical evidence presented at trial.
The operative subsection of the recently enacted statute providing for post-conviction DNA testing of evidence sets forth eight conditions a convicted person must establish to be entitled to such testing:
(1) the evidence to be tested is available and in a condition that would permit the DNA testing that is requested in the motion;
(2) the evidence to be tested has been subject to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced or altered in any material aspect;
(3) the identity of the defendant was a significant issue in the case;
(4) the convicted person has made a prima facie showing that the evidence sought to be tested is material to the issue of the convicted person's identity as the offender;
(5) the requested DNA testing would raise a reasonable probability that if the results were favorable to the defendant, a motion for a new trial based upon newly discovered evidence would be granted. The court in its discretion may consider any evidence whether or not it was introduced at trial;
(6) the evidence sought to be tested meets either of the following conditions:
(a) it was not tested previously;
(b) it was tested previously, but the requested DNA test would provide results that are reasonably more discriminating and probative of the identity of *825 the offender or have a reasonable probability of contradicting prior test results;
(7) the testing requested employs a method generally accepted within the relevant scientific community; and
(8) the motion is not made solely for the purpose of delay.

[N.J.S.A. 2A:84A-32a(d).][1]
In State v. Hogue, 175 N.J. 578, 585, 818 A.2d 325, 329 (2003), the Court noted that N.J.S.A. 2A:84A-32a has "broad application" to any person convicted of a crime who is currently serving a term of imprisonment. However, the sole issue in Hogue was whether a convicted person must wait until the end of the direct appeal process before seeking DNA testing by a petition for post-conviction relief, which the Court held was not required. Consequently, the Court in Hogue did not have occasion to consider the conditions for post-conviction DNA testing set forth in N.J.S.A. 2A:84A-32a(d), and there is no other reported opinion dealing with those conditions.
The State does not dispute that defendant established the conditions for post-conviction DNA testing set forth in N.J.S.A. 2A:84-32a(d)(1), (2), (4), (6), (7) and (8). However, the State successfully opposed DNA testing of the physical evidence introduced at defendant's trial on the ground that he failed to make the showings required by N.J.S.A. 2A:84A-32a(d)(3) and (5)that identity was a "significant issue" and that there is a "reasonable probability" a motion for new trial would be granted if the results of the DNA testing were "favorable."
We first consider whether identity was a "significant issue" at the trial. In concluding that defendant failed to make this showing, the trial court stated:
[T]his is not [a] case where a witness makes a stranger to stranger identification, often through a photo array or a in-person line up.
....
... I think the reason that that's in the statute is because lawyers have become extremely conscious about identification testimony when it's a stranger to stranger identification. It seems to be an area where risk of erroneous identification is high. So, I find that ... the identity issue is not present as far as the statute is concerned.
We perceive no basis in the language of N.J.S.A. 2A:84A-32a(d)(3) or the policy of N.J.S.A. 2A:84A-32a to confine post-conviction DNA testing to cases in which a conviction rests primarily upon eyewitness identification evidence. This subsection *826 only requires a showing that "identity" was a "significant issue" at trial; it does not specify that the identification of the defendant as the perpetrator must have been established by any particular form of evidence. Eyewitness identification is simply one method of proving a perpetrator's identity. The identification of the defendant also may be established by various other forms of evidence including, as in this case, the defendant's inculpatory statements and efforts to avoid apprehension and physical evidence found at the crime scene. Indeed, it would be anomalous to construe N.J.S.A. 2A:84A-32a as being inapplicable to a case in which the identification of the defendant rested substantially upon scientific analysis of crime scene evidence that now may be subject to more sophisticated and reliable DNA testing. The underlying objective of N.J.S.A. 2A:84-32ato provide an opportunity for exoneration of an innocent person through the testing of evidence by a highly reliable scientific methodology that was not available at the original trialmay be served in any case where there is a genuine question concerning the identity of the perpetrator. Therefore, we conclude that the requirement of N.J.S.A. 2A:84A-32a(d)(3) that "identity" must have been a "significant issue" at defendant's trial before post-conviction DNA testing will be ordered does not turn on the form of evidence the State relied upon to prove the perpetrator's identity.
The State argues, as an alternative grounds for concluding that defendant failed to make the showing required by N.J.S.A. 2A:84A-32a(d)(3), that identity was not a "significant" issue at trial because the prosecution presented overwhelming evidence that defendant was the perpetrator. But despite the strong evidence of his guilt, defendant's identity as the perpetrator was the only issue at trial.
Defendant took the stand and denied that he was the one who raped and murdered the victim. Moreover, defendant presented his girlfriend's testimony that he was with her in a motel room at the time of the crime. Although this alibi evidence was discredited, defendant's only defense was that he was not the perpetrator of this horrific crime. Therefore, we conclude that the strength of the evidence against a defendant is not a relevant factor in determining whether his identity as the perpetrator was a significant issue. See State v. Urioste, 316 Ill.App.3d 307, 249 Ill.Dec. 512, 736 N.E.2d 706, 711 (2000) (where the court held, in construing a similar "identity at issue" requirement of the Illinois post-conviction DNA testing statute, that "the strength of the State's case was not a hurdle that he had to overcome in order to meet the statute's requirements for postconviction forensic testing"); compare State v. Halsey, 329 N.J.Super. 553, 560, 748 A.2d 634, 638 (App.Div.), certif. denied, 165 N.J. 491, 758 A.2d 650 (2000) (where the court declined to order post-conviction DNA testing because the only defenses asserted at trial were intoxication and diminished capacity).
Furthermore, the testimony of the State Police forensic scientist, Gail Tighe, that some hair samples found at the crime scene had the same characteristics as defendant's hair, was one of the primary components of the State's overwhelming evidence of defendant's guilt. If DNA testing shows that defendant was not the source of those hair samples, the evidence of defendant's guilt could appear a lot less overwhelming than it did at the time of trial. Therefore, the trial court erred in concluding that defendant failed to show, as required by N.J.S.A. 2A:84A-32a(d)(3), that identity was a "significant issue" at his trial.
*827 We next consider whether defendant made the showing required by N.J.S.A. 2A:84A-32a(d)(5)that there is a reasonable probability he would be granted a new trial based on newly discovered evidence if the results of the DNA testing were favorable to him.
Initially, we note that N.J.S.A. 2A:84A-32a(d)(5) does not require a convicted person to make a threshold showing that there is a "reasonable probability" DNA testing will produce favorable results. The "reasonable probability" requirement of N.J.S.A. 2A:84A-32a(d)(5) applies only to the grant of a new trial in the event the results of DNA testing are favorable. Consequently, even if a trial court concludes, in light of the overwhelming evidence of a defendant's guilt presented at trial, that it is unlikely DNA testing will produce favorable results, the court may not deny a motion for DNA testing on that basis.
Moreover, there may be a variety of "favorable" results of DNA testing, some of which would not raise a sufficient question concerning the integrity of the jury verdict to require a new trial, but others of which would raise such serious doubt concerning the fairness of the trial and a convicted person's guilt that a new trial would be required. For example, in the appeal from the denial of defendant's petition for post-conviction relief, we focused on the possibility that DNA testing could establish that defendant was not the source of the semen on the outside of the victim's pants. This "favorable" result would not, by itself, require a new trial because the record indicates that the victim had sexual relations with at least two other men during the evening preceding the murder and she presumably was wearing the pants found at the murder scene that entire evening. See People v. Gholston, supra, 231 Ill.Dec. 821, 697 N.E.2d at 380. On the other hand, if DNA testing of the hair samples found at the murder scene, which Tighe testified had the same characteristics as defendant's hair, showed that defendant was not the actual source of that hair, defendant would probably be entitled to a new trial. Thus, the trial court would have to consider the evidential significance of whatever "favorable" DNA test results were obtained in light of the overall trial record to determine whether defendant was entitled to a new trial based on those results. Moreover, because it is difficult to anticipate what results DNA testing may produce in advance of actual testing, the trial court should postulate whatever realistically possible test results would be most favorable to defendant in determining whether he has established that "favorable" DNA testing "would raise a reasonable probability ... a motion for new trial based upon newly discovered evidence would be granted," N.J.S.A. 2A:84A-32a(d)(5).
In this case, DNA testing could show that defendant was not the source of the semen found on the outside of the victim's pants, the blood under her fingernails or of the hairs discovered on and near the body that Tighe testified had the same characteristics as defendant's hair. In addition, DNA testing could show that all of this evidence, including the hairs on the sticks found at the crime scene, had a common identifiable source other than defendant who could have had access to the victim around the time of the murder. Furthermore, if the source of the semen, blood and hairs turned out to be Elderthe first person who reported to the police that defendant had made inculpatory statements during a car drive to work the morning of the murderthis would raise serious questions concerning the veracity of the trial testimony about those alleged *828 statements, which was a crucial part of the State's proofs.
To be entitled to a new trial based on newly discovered evidence, a defendant must show that the new evidence is "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." State v. Carter, 85 N.J. 300, 314, 426 A.2d 501, 508 (1981). DNA testing which showed that another person was the source of the crime scene evidence that the State's expert witness, Tighe, attributed to defendant certainly would be "material to the issue [of the perpetrator's identity] and not merely cumulative or impeaching or contradictory." Ibid. Such DNA testing results would also constitute evidence "discovered since the trial." Ibid. Moreover, even though some early forms of DNA testing were in use at the time of defendant's trial in 1989, DNA testing has become more common and more reliable in the intervening fourteen years. Consequently, we are satisfied such evidence was not "discoverable by reasonable diligence before defendant's trial." Ibid. Finally, DNA test results that not only tended to exculpate defendant but to implicate someone else would be evidence of "the sort that would probably change the jury's verdict if a new trial were granted." Ibid.[2] Therefore, defendant has established that the requested DNA testing "would raise a reasonable probability that if the results were favorable to the defendant, a motion for a new trial based upon newly discovered evidence would be granted." N.J.S.A. 2A:84A-32a(d)(5).
Accordingly, we reverse the order denying defendant's motion for DNA testing of the forensic evidence introduced at his trial and remand for entry of an order for DNA testing in accordance with N.J.S.A. 2A:84A-32a(e).
NOTES
[1] Similar statutes have been enacted in more than twenty-five other states. See Kathy Swedlow, Don't Believe Everything You Read: A Review of Modern "Post-Conviction" DNA Testing Statutes, 38 Cal. W.L. Rev. 355, 355 n. 2 (2002), which lists most of the post-conviction DNA testing statutes enacted in other states. None of these statutes are identical to N.J.S.A. 2A:84A-32a, although most include some variation of N.J.S.A. 2A:84A-32a(3)'s requirement that identity must have been a "significant issue" at the convicted person's trial and N.J.S.A. 2A:84A-32a(5)'s requirement that there must be a "reasonable probability" that "favorable" DNA results would result in a new trial before post-conviction DNA testing will be ordered. Because most of these statutes have been enacted only recently, there is limited case law interpreting their provisions. See, e.g., Anderson v. State, 831 A.2d 858 (Del.2003); Manual v. State, 855 So.2d 97, 98 (Fla.Dist.Ct.App.2003); Knighten v. State, 829 So.2d 249, 250 (Fla.Dist.Ct.App.2002); People v. Hockenberry, 316 Ill.App.3d 752, 250 Ill.Dec. Ill, 737 N.E. 2d 1088, 1090 (2000), appeal denied, 195 Ill.2d 587, 258 Ill.Dec. 97, 755 N.E.2d 480 (2001); People v. Rokita, 316 Ill.App.3d 292, 249 Ill.Dec. 363, 736 N.E.2d 205, 207-08 (2000); People v. Gholston, 297 Ill.App.3d 415, 231 Ill.Dec. 821, 697 N.E.2d 375, 377 (1998). This case law does not provide any significant assistance in dealing with the issues presented by this appeal.
[2] Our opinion should not be construed to mean that only DNA testing results which inculpated another person could be found to warrant a new trial. The only issue before us is whether there is any realistically possible outcome of DNA testing that would create a reasonable probability a new trial would be granted. The trial court may determine that DNA testing results which are less favorable to defendant than the "best case scenario" postulated in this opinion nevertheless satisfy the Carter criteria and warrant a new trial.