861 A.2d 860 (2004)
373 N.J. Super. 396
STATE of New Jersey, Plaintiff-Respondent,
v.
Robert RELDAN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 1, 2004.
Decided December 7, 2004.
*862 Yvonne Smith Segars, Public Defender, attorney for appellant (Shepard Kays, Designated Counsel, on the brief).
John L. Molinelli, Bergen County Prosecutor, attorney for respondent (Catherine A. Foddai, Assistant Prosecutor, of counsel and on the brief).
Before Judges PETRELLA, PARKER and YANNOTTI.
The opinion of the court was delivered by
PETRELLA, P.J.A.D.
Defendant Robert Reldan appeals from the denial of his motion requesting DNA testing of hair samples produced at his trial for the murder of two women in Bergen County. Reldan was indicted on January 20, 1979, and charged with the two murders. A first jury trial ended in a mistrial. The jury in the second trial found Reldan guilty of both murders, but this conviction was reversed due to errors in the admission of other crimes evidence, and remanded for a new trial. See State v. Reldan, 185 N.J.Super. 494, 449 A.2d 1317 (App.Div.1982), certif. denied, 91 N.J. 543, 453 A.2d 862 (1982). After a suppression order was reversed in State v. Reldan, 100 N.J. 187, 495 A.2d 76 (1985), a third trial commenced on January 27, 1986, in which Reldan represented himself. He was again convicted of both murders and his convictions were affirmed in State v. Reldan, A-4588-85, decided May 15, 1989, certif. denied, 121 N.J. 598, 583 A.2d 303 (1990).
On March 9, 2001, Reldan filed a motion with supporting certification requesting DNA testing of hair samples produced at trial. After a hearing, the motion was denied by Judge Venezia on November 18, 2002.
On appeal, Reldan argues:
I. The court was incorrect in determining that even if DNA testing showed that the hair samples were not that of the victims, it would not have changed the verdict as the evidence at trial had been overwhelming.
II. The defendant's constitutional rights were violated, as it was fundamentally unfair for the court to deny his motion for DNA testing of relevant and exculpatory evidence that would potentially alter the result of his trial.
Reldan was charged with the murders of S.H. (count one) and S.R. (count two), which occurred on October 6, 1975, and October 14, 1975, respectively. The facts involving these murders and the procedural background are fully detailed in Reldan, supra (185 N.J.Super. 494, 449 A.2d 1317), and our unpublished opinion in docket number A-4588-85, as well as in the Supreme Court's opinion upholding the reversal of an order suppressing the results of a vacuum sweep of Reldan's car's interior. See State v. Reldan, supra (100 N.J. 187, 495 A.2d 76). We need not further detail the procedural history and background facts here.
Reldan was convicted of second degree murder on count one and first degree murder on count two. He was sentenced to a mandatory term of life imprisonment for the first degree murder of S.R., to be served consecutively to sentences already imposed, and a consecutive thirty-year term of imprisonment for the second degree murder of S.H.
*863 In March 2001, Reldan filed a motion to compel DNA testing on the hair samples found in his car. At the hearing of the motion on November 12, 2002, Reldan argued that he was entitled to obtain DNA testing of the hair samples in order to obtain a new trial. Reldan also argued that the State should not be allowed to argue based on evidence not admitted at the trial and that N.J.S.A. 2A:84A-32a, which the judge looked to for guidance,[1] is fundamentally unfair because it permits the court to consider evidence not admitted at trial to decide the motion. Judge Venezia concluded that it would be proper to consider certain evidence not admitted at trial. Additionally, he denied Reldan's motion, concluding that the evidence at trial in 1986, which included microscopic examination of materials obtained in the vacuuming of his automobile, see 100 N.J. at 195, 495 A.2d 76, was overwhelming and the DNA test results would have little effect on the outcome of the trial.

I.
We first consider Reldan's contention that the judge erred in denying his motion seeking to perform DNA tests on the hair samples for the purpose of seeking a new trial.
Under N.J.S.A. 2A:84A-32a, any person convicted of a crime who is currently serving a term of imprisonment may file a motion with the trial court that entered the judgment of conviction requesting the performance of DNA testing. In order for the court to grant the motion, it must be established that:
(1) the evidence to be tested is available and in a condition that would permit the DNA testing that is requested in the motion;
(2) the evidence to be tested has been subject to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced or altered in any material aspect;
(3) the identity of the defendant was a significant issue in the case;
(4) the convicted person has made a prima facie showing that the evidence sought to be tested is material to the issue of the convicted person's identity as the offender;
(5) the requested DNA testing result would raise a reasonable probability that if the results were favorable to the defendant, a motion for a new trial based upon newly discovered evidence would be granted. The court in its discretion may consider any evidence whether or not it was introduced at trial;
(6) the evidence sought to be tested meets either of the following conditions:
(a) it was not tested previously;
(b) it was tested previously, but the requested DNA test would provide results that are reasonably more discriminating and probative of the identity of the offender or have a reasonable probability of contradicting prior test results;
(7) the testing requested employs a method generally accepted within the relevant scientific community; and
(8) the motion is not made solely for the purpose of delay.

*864 [N.J.S.A. 2A:84A-32a.d.]
The statute applies broadly to any individual who was convicted of a crime and is currently serving a sentence. State v. Peterson, 364 N.J.Super. 387, 394, 836 A.2d 821 (App.Div.2003).
Under subsection (5) of this statute, a defendant need not prove the DNA results will be favorable, rather it must only be established that there is a reasonable probability that a new trial would be granted if the DNA results are favorable to the defendant. State v. Peterson, supra (364 N.J.Super. at 396-397, 836 A.2d 821). The general rule for the grant of a new trial requires that a defendant show that the new evidence is: "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." State v. Carter, 85 N.J. 300, 314, 426 A.2d 501 (1981).
Thus, a new trial would be granted where "the State's proofs are weak, when the record supports at least a reasonable doubt of guilt, and when there exists a way to establish guilt or innocence once and for all." State v. Thomas, 245 N.J.Super. 428, 436, 586 A.2d 250 (App.Div.1991), appeal dismissed, 130 N.J. 588, 617 A.2d 1214 (1992). See also State v. Cann, 342 N.J.Super. 93, 104, 775 A.2d 733 (App.Div.), certif. denied, 170 N.J. 208, 785 A.2d 437 (2001). A defendant cannot compel the State to release the evidence for DNA testing where the evidence at trial was overwhelming and the defendant did not present a defense or alibi that would be consistent with the explanation the DNA results might supply. State v. Halsey, 329 N.J.Super. 553, 560, 748 A.2d 634 (App.Div.), certif. denied, 165 N.J. 491, 758 A.2d 650 (2000); compare State v. Peterson, supra (364 N.J.Super. at 396, 836 A.2d 821) ("the strength of the evidence against a defendant is not a relevant factor in determining whether his identify as the perpetrator was a significant issue").
Judge Venezia denied the motion to compel DNA testing of the hair samples, concluding that all elements were met except the fifth element, requiring prima facie evidence that Reldan would be entitled to a new trial based on the newly discovered evidence. He determined that there was overwhelming evidence of Reldan's participation in the two murders.
This decision was based on evidence presented at trial which included: (1) testimony of the jeweler whom Reldan approached to try to sell the unique engagement ring purchased in London and assertedly identical to S.H.'s ring; (2) testimony of Melvin Norman claiming Reldan approached him to try to sell him the same ring; (3) statements by Reldan during police interviews linking him to the murders; (4) numerous witness accounts linking Reldan to the victims; and (5) testimony from a prison inmate that Reldan admitted killing the victims. The judge also noted evidence not presented at trial: (1) blood stains found in Reldan's aunt's garage that matched the blood of S.R.; (2) police tracking dogs that detected the scent of both victims in Reldan's car, garage and home; (3) the account of a toll collector from the Port Authority, indicating that Reldan was in the presence of one of the victims.[2] The blood stains were presented at trial, but excluded as speculative; however, the *865 other evidence was not presented. The judge concluded that it was not reasonably probable that a new trial would be granted because the evidence of guilt made it unlikely to change the jury verdict.
This case is distinguishable from those cases where the court determined the DNA test results, if favorable, could change the jury's verdict. In State v. Peterson, supra (364 N.J.Super. at 398-399, 836 A.2d 821), the DNA evidence was semen found on the outside of the victim's pants, blood under the victim's fingernails and hair on or near the body. This evidence could not only exculpate the defendant, but implicate another. Thus, we concluded that the DNA testing should be performed on the evidence. Similarly, in State v. Velez, 329 N.J.Super. 128, 131, 136, 746 A.2d 1073 (App.Div.2000), the evidence consisted of semen on the victim's sweatshirt, pants, and in a condom. Further, the defendant offered the alibi that he was at his girlfriend's house, which was corroborated by the girlfriend's testimony at trial. We noted that this evidence could serve to exculpate the defendant and potentially change the jury's verdict.
The case at bar is more akin to State v. White, 260 N.J.Super. 531, 539, 617 A.2d 272 (App.Div.1992), certif. denied, 133 N.J. 436, 627 A.2d 1141 (1993), where we concluded that the testing of semen found on defendant's shirt would not be exculpatory as it was not found on the victim's clothing. These tests would not prove defendant's innocence. Here, DNA testing of the hairs found in the Reldan's car would not exculpate him, rather at best it might indicate that those particular hairs were not those of either or both of the victims, something that would not change the jury's verdict where, as here, there was overwhelming evidence linking Reldan to the crimes.
Other states have enacted statutes similar to N.J.S.A. 2A:84A-32d. For example, see 11 Delaware Code § 4504; Illinois St. Ch. 275 § 5/116-3; and Florida Statutes Annotated § 925.11. Delaware has strictly applied its statute so that failure to satisfy any of the requisites of the statute precludes granting a defendant's motion for post-conviction relief since the requirements are stated in a conjunctive manner. State v. White, Nos. 96-05-0389 and 96-05-0390, 2002 WL 31814862 (Del.Super.Ct. Oct. 31, 2002), aff'd, 818 A.2d 971 (Del.2003); see also Wolf v. State, 850 A.2d 303 (Del.2004); and State v. Redding, 2002 WL 31411021 (Del.Super.Ct. Oct.28, 2002), rev'd on other grounds, Anderson v. State, 831 A.2d 858 (Del.2003). Similar requirements exist in Illinois and Florida. See People v. Price, 345 Ill.App.3d 129, 280 Ill.Dec. 242, 801 N.E.2d 1187 (2003); People v. Urioste, 316 Ill.App.3d 307, 249 Ill.Dec. 512, 736 N.E.2d 706 (2000); Harris v. State, 868 So.2d 589 (Fla.App. 3d Dist.2004), review denied, 880 So.2d 1211 (Fla.2004) (holding that post-conviction application of DNA testing appropriately denied given absence of reasonable probability that results would have led to acquittal); Tompkins v. State, 872 So.2d 230 (Fla.2003) (finding no reasonable probability of acquittal of capital murder based on DNA evidence of hair, bone fragments, victim's robe or pajamas found in shallow grave); Zollman v. State, 820 So.2d 1059 (Fla.App. 2d Dist.2002), appeal after remand, 854 So.2d 775 (Fla.App. 2d Dist.2003) (whether DNA testing will exonerate defendant requires consideration of the crime and other available evidence); and King v. State, 808 So.2d 1237 (Fla.2002), cert. denied, 536 U.S. 962, 122 S.Ct. 2670, 153 L.Ed.2d 843 (2002) (post-conviction DNA testing of hair fragment found on murder victim's nightgown would not establish reasonable probability of acquittal).
*866 Simply stated, the judge appropriately denied Reldan's post-conviction motion for DNA testing as it would not have changed the jury's verdict. Reldan did not establish with reasonable probability that a new trial would be granted.

II.
Reldan next contends that the statute does not purport to allow evidence not admitted at trial to be considered when determining whether DNA testing should be ordered post-judgment. Alternatively, Reldan argues that if the statute were to allow the consideration of evidence not admitted or produced at trial, then the statute is fundamentally unfair.[3]
The statute provides in pertinent part:
(5) the requested DNA testing result would raise a reasonable probability that if the results were favorable to the defendant, a motion for a new trial based upon newly discovered evidence would be granted. The court in its discretion may consider any evidence whether or not it was introduced at trial. [N.J.S.A. 2A:84A-32a.d.(5) (Emphasis added).]
The language of the statute here is clear and unambiguous. Thus, we read it under its plain meaning, unless it is clearly contrary to the legislative intent. Chase Manhattan Bank v. Josephson, 135 N.J. 209, 225, 638 A.2d 1301 (1994). The statute is clear and unambiguous that a judge considering this type of post-judgment motion has the authority to review "any evidence whether or not it was introduced at trial." Reldan argues that because the Assembly and Senate committee statements do not address the nature of the evidence to be considered, it would be contrary to the legislative intent to review evidence either not presented at trial or evidence previously characterized as inadmissible. With that being said, nothing in the legislative history suggests that the plain meaning of the statute is contrary to the legislative intent.
Regarding Reldan's second contention, the doctrine of fundamental fairness has been characterized as "an `elusive concept ... [where] exact boundaries are undefinable.'" State v. Yoskowitz, 116 N.J. 679, 705, 563 A.2d 1 (1989). Essentially, it is employed where the defendant has not been afforded a specific constitutional protection. Ibid. However, it has been invoked and limitations have been placed on government action where the circumstances do not rise to the level of a constitutional violation.[4]State v. Cruz, 171 N.J. 419, 429, 794 A.2d 165 (2002). The doctrine is applied sparingly and is preserved for instances where failure to apply it would result in defendant being subjected to "`oppression, harassment, or egregious deprivation.'" State v. Maisonet, 166 N.J. 9, 20, 763 A.2d 1254 (2001) (quoting Yoskowitz, supra (116 N.J. at 712, 563 A.2d 1)).
Here, Reldan claims that the statute violates fundamental fairness by giving the judge authority to review evidence not introduced *867 at trial because it prevents him from having a fair and impartial hearing. While this argument may have viability as to consideration of evidence already characterized as inadmissible because the judge would review evidence kept from the jury to determine whether the jury verdict would change, no fundamental unfairness exists in the present case. There was more than sufficient evidence in the record, without considering evidence either not presented or determined inadmissible, for the judge to conclude that there was no reasonable probability that a new trial would be granted. Favorable DNA test results would not have changed the jury's verdict in this case because it would not have disproved Reldan's commission of the two murders.
Affirmed.
NOTES
[1] N.J.S.A. 2A:84A-32a was approved on January 8, 2002, but was to take effect on the 180th day after enactment. L. 2001, c. 377, § 4. Thus, its effective date was July 7, 2002, and Reldan's attorney conceded that technically the statute did not apply because his motion was filed March 9, 2001. At the November 12, 2002 hearing the judge reviewed this aspect with the attorneys and concluded that he would look to the statute for guidance. In view of the fact that the motion could have been withdrawn and refiled after July 7, 2002, and before the argument date, we consider the appeal within the statutory framework.
[2] The judge determined as a matter of law he was permitted to consider arguments and evidence not presented at trial to determine whether the motion should be granted. This aspect is further discussed in Point II, infra.
[3] Obviously, DNA evidence was not considered at the prior trials.
[4] See State v. Tropea, 78 N.J. 309, 394 A.2d 355 (1978) (defendant's retrial was barred on a motor vehicle speeding charge where reversal of earlier conviction was based on the State's failure to prove the applicable speed limit); Rodriguez v. Rosenblatt, 58 N.J. 281, 277 A.2d 216 (1971) (indigent individuals in municipal court must be afforded the right to assigned counsel when facing charges that could result in imprisonment); State v. Calvacca, 199 N.J.Super. 434, 489 A.2d 1199 (App.Div.1985) (a second trial court was barred from imposing a custodial sentence based on a drunk driving conviction arising out of an event for which defendant had already received a custodial sentence).