# Commonwealth v. Davis

*Joseph Stauffer, deputy district attorney,* for Commonwealth.

*Tierre Davis,* pro se.

STEINBERG, *J.,* March 23, 2005—On February 1, 2005, the petitioner, Tierre Davis, filed a "Motion for post-conviction DNA testing" pursuant to 42 Pa.C.S. §9543.1. His motion, which appears to be partially pre-printed and partially written in hand, alleges that blood, and a "hair strand" were never tested. He also alleges that a "rape kit" was "ceased" [sic] as evidence and tested. Finally, it is alleged that the 3-year-old victim, T.D., could not identify the perpetrator.

On March 25, 1999, the petitioner was found guilty after a trial by jury of physically and sexually abusing his biological daughter, T.D. Her injuries were so extensive that one of the medical experts explained that "people, kids, who fell off of three story buildings before . . . [did] not look as bad as she did. She literally had bruises just about everywhere."[1] On May 4, 1999, this court sentenced the petitioner to a total of 21 to 42 years imprisonment for the crimes of aggravated assault,[2] simple assault,[3] recklessly endangering another person,[4]

---

1. Jury trial, notes of testimony, vol. II at 166 [N.T.J.T.].
2. 18 Pa.C.S. §2702(a)(1).
3. 18 Pa.C.S. §2701(a)(1).
4. 18 Pa.C.S. §2705.

endangering welfare of children,[5] involuntary deviate sexual intercourse,[6] and aggravated indecent assault.[7]

The petitioner appealed to the Superior Court and the judgment of sentence was affirmed. See *Commonwealth v. Davis,* no. 3269 EDA 1999 (Pa. Super. January 26, 2001). The Superior Court in its opinion explained that the "Allentown Police arrested and charged Davis after EMS rushed his unconscious 3-year-old daughter, T.D., to the hospital where, upon examination, doctors found evidence of extensive physical and sexual abuse. Davis was charged with aggravated assault, simple assault, recklessly endangering another person, and endangering welfare of children based on information from T.D.'s mother and an admittance by Davis that he had struck his daughter with a belt and his hand on the day before T.D.'s hospitalization. Mother also informed the police that Davis had hit T.D. approximately 15 times with a belt and numerous other times with his hand during the prior week. Subsequently, the charges of involuntary deviate sexual intercourse and aggravated indecent assault were added based on information supplied through an affidavit by T.D.'s doctor. T.D.'s doctor indicated that lacerations in T.D.'s vaginal and anal area were consistent with an attempted penetration of those areas with an unknown object and occurred at the same time that the other physical injuries occurred." *Id.* at 2.

A review of the testimony also revealed that an examination of T.D.'s genital area revealed an ulcer be-

5. 18 Pa.C.S. §4304.
6. 18 Pa.C.S. §3123(a)(6).
7. 18 Pa.C.S. §3125(7).

tween the vagina and the rectum, redness and swelling of the hymeneal ring, recent hemorrhaging underneath the outer lining of the vagina, small linear tears inside the vagina, some bruising around the rectum, and cuts and ulcers around the anus.[8] Both Commonwealth experts rendered opinions concerning blunt trauma as the cause of the injuries to the child's vagina and anus. Dr. Randolph Cordle, although unable to tell the exact size or shape of the object that penetrated the vagina, testified that, "it [was] something larger than a 3-year-old's finger and something had to occur with some force."[9] As for the object which caused injuries to the child's anus, he concluded, "I can't tell you what object, how big the object was, but something definitely went through the anus and caused the bruising."[10]

Other testimony, including the child's mother, described not only the petitioner's access to the child, but how the disciplining progressed from spankings to belt whippings, and how they became more severe. Mother described the petitioner's attacks on the child that occurred on November 29, 1997, the day before the child was taken to the hospital. Finally, the petitioner's claim that the 3-year-old child could not identify him as her attacker is contradicted by the trial testimony. Deborah Arnold, the child's foster mother, testified that the child told her that "Daddy did this to me," "Daddy put his pee pee in [my] pee pee and mouth," "Daddy put his pee pee in [my] sue sue," and "Daddy put his hand in [my] sue sue."[11]

8. N.T.J.T., *supra* note 1 at vol. II at 91-93.
9. *Id.* at vol. II at 206.
10. *Id.* at vol. II at 212.
11. *Id.* at vol. III at 10-18.

Following the denial of the petitioner's direct appeal, he filed claims under the Post Conviction Relief Act, 42 Pa.C.S. §§9541-9579, which resulted in the Superior Court quashing the appeal. See *Commonwealth v. Davis,* no. 3084 EDA 2002 (Pa. Super. September 10, 2003). It is now, more than seven years after his crimes and almost 17 months after his last appeal was dismissed, that the petitioner is seeking DNA testing.

Following receipt of the petitioner's motion, this court, pursuant to section 9543.1(b)(1) notified the Commonwealth of it, and permitted them 30 days to respond. On March 18, 2005, the Commonwealth filed a "Notice of Commonwealth's opposition to DNA testing."

The "Post Conviction DNA Testing" statute became effective on September 8, 2002, but the petitioner, without explanation, waited over 28 months to file his petition. In fact, more than one year has elapsed since the petitioner's PCRA petition was dismissed by the Superior Court. As a result, the petitioner's motion should be time barred. See *Commonwealth v. Weeks,* 831 A.2d 1194 (Pa. Super. 2003).

The petitioner has also failed to present a prima facie case justifying DNA testing. 42 Pa.C.S. §9543.1(c)(3). To do so, the statute requires the petitioner to demonstrate the following:

"(3) present a prima facie case demonstrating that the:

"(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

"(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

"(A) the applicant's actual innocence of the offense for which the applicant was convicted;

"(B) in a capital case, the applicant's actual innocence of the charged or uncharged conduct constituting an aggravating circumstance under section 9711(d) if the applicant's exoneration of the conduct would result in vacating a sentence of death; or

"(C) in a capital case, a mitigating circumstance under section 9711(e)(7) under the circumstances set forth in subsection (c)(1)(iv)."

The identity of the perpetrator of the physical assaults was not contested during the trial. The defense was aimed primarily at the sexual allegations. During a hearing on the petitioner's ineffective assistance of counsel claims, trial counsel testified that if he could have persuaded the petitioner to testify, the petitioner would have admitted striking the child, but not sexually assaulting her.[12]

However, DNA testing could neither yield exculpatory results nor establish "actual innocence." The analysis of the physical evidence did not uncover any presence of acid phosphatase (an enzyme found in semen) or spermatozoa. A copy of the lab report prepared by the Pennsylvania State Police analyzing the Sirchie Sex Crimes Kit containing the items collected from the child is attached to this opinion [not published herein].

A petitioner who is seeking DNA testing must "demonstrate that favorable results of the requested DNA test-

---

12. Notes of testimony of hearing on post-verdict and amended post-verdict motions on September 9, 1999 at 32-33, 63-65, 86 [N.T.P.V.M.]. The defendant repeated this to this court at sentencing and hearing on these motions. Notes of testimony sentencing hearing at 11-12, 13, 15; N.T.P.V.M. at 70, 78.

ing *'would establish'* the appellant's actual innocence of the crime . . . ." *Commonwealth v. Heilman,* 867 A.2d 542, 546 (Pa. Super. 2005). (emphasis in original) A fill-in-the-blanks pre-printed form does not satisfy the prima facie requirements. The petitioner's motion does nothing more than allege that unspecified blood and a "hair strand" were never tested, without explaining how actual innocence would extrapolate from those facts.

Finally, the petitioner's guilt was overwhelming and DNA testing would not have changed the jury's verdict. See *State v. Reldan,* 373 N.J. Super. 396, 861 A.2d 860 (2004) (collecting cases); *King v. State,* 808 So.2d 1237, 1247-49 (Fla. 2002) (post-conviction DNA testing of hair fragment found on murder victim's nightgown would not establish reasonable probability of acquittal).[13] Not only was the petitioner identified as the perpetrator, but the severe injuries suffered by the child were confirmed by both medical experts and civilian observations.

For the foregoing reasons, the petitioner has failed to present a prima facie case as required by section 9543.1 and his motion for post-conviction DNA testing is dismissed.

## ORDER

And now, March 23, 2005, following review of the petitioner's trial, it appearing that the petition is untimely and there is no reasonable possibility that DNA testing would produce exculpatory evidence that would establish the petitioner's actual innocence of the offenses for which he was convicted; it is hereby ordered that the petitioner's request for post-conviction DNA testing, pursuant to 42 Pa.C.S. §9543.1 is denied.

13. See also, *State ex rel. Richey v. Hill,* 603 S.E.2d 177, 187-89 (W. Va. 2004).