# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### August 6, 2013

## STATE OF TENNESSEE v. RICKY LEE NELSON

**Appeal from the Criminal Court for Shelby County**
**Nos. 89-04384, 89-04385 & 89-04386  J. Robert Carter, Jr., Judge**

---

**No. W2012-00741-CCA-R3-CD - Filed January 27, 2014**

---

In 1990, the petitioner was convicted of robbery with a deadly weapon, second degree burglary, and aggravated rape.  He received an effective sentence of twenty-five years.  His convictions were affirmed on direct appeal and in post-conviction litigation.  In 2010, the petitioner filed a Motion for Post-Conviction DNA Testing of a knife believed to have been brandished during the crimes, and the post-conviction court denied the motion after a non-evidentiary hearing.  This court remanded the case to the post-conviction court for reconsideration in light of *Powers v. State*, 343 S.W.3d 36, 56 (Tenn. 2011).  On remand, the post-conviction court conducted another hearing and again denied the motion.  On appeal, the defendant claims that the post-conviction court erred by: (1) finding that the knife at issue was not in adequate condition to permit DNA testing; and (2) holding that exculpatory results would have been insufficient to establish a reasonable probability that the defendant would not have been prosecuted or convicted of the crimes.  After review, we agree that the post-conviction court applied incorrect legal standards and reached erroneous results when it made these determinations.  Using the correct legal standards as set forth by our supreme court in *Powers*, the defendant has established his entitlement to DNA testing of the knife handle.  The judgment of the post-conviction court is reversed, and the case is remanded to the post-conviction court for entry of an order granting the request for DNA analysis.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed; Case Remanded to the Post-Conviction Court.**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined.  THOMAS T. WOODALL, J., filed a separate concurring opinion.

Bryce Benjet, Innocence Project, New York, New York and Joseph McClusky, Memphis, Tennessee (on appeal); John Campbell, Innocence Project, New York, New York (at trial), for the appellant, Ricky Lee Nelson.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and John Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

In 1990, following a jury trial, the petitioner was convicted of aggravated rape, aggravated robbery, and second degree burglary. He received a twenty-five year sentence. This court affirmed the petitioner's convictions on direct appeal. *See State v. Ricky Nelson*, No. 02-C-019103CR00050, 1991 Tenn. Crim. App. LEXIS 812 (Tenn. Crim. App. Oct. 2, 1991), *perm. app. denied* (Tenn. Feb. 24, 1992). The facts leading to the petitioner's convictions were briefly summarized in this court's opinion in that case:

> [The petitioner] raped and robbed a woman in her own home in Memphis while she was dressing for church on Sunday, February 19, 1989. He entered the home for the ostensible purpose of talking with the woman's daughter about a job. He had talked with the younger woman the preceding day. Before the rape and robbery, the daughter called her mother, and [the daughter] realized that the [petitioner] was in the home because she recognized his voice. The [petitioner] brandished a butcher knife during his crimes. After the brutal rape and robbery, the ensuing investigation corroborated the testimony of both women at the two-day trial. Both women identified the [petitioner] at trial as the man who had come to the home on Saturday and later raped and robbed the mother on Sunday.

> After the state rested, the [petitioner] was questioned by his attorney and the court as to whether or not he wanted to take the witness stand. He stated that he did not. He presented no proof. Deliberating for less than an hour, the jury convicted [the petitioner].

*Nelson*, 1991 Tenn. Crim. App. LEXIS 812, at *1.

In 1993, the petitioner filed for post-conviction relief and post-conviction DNA testing, arguing that his counsel was ineffective at trial and seeking state-funded DNA testing of certain evidence used against him. The post-conviction court denied the petition, and this court subsequently affirmed the post-conviction court's decision. *See Ricky Nelson v. State*,

No. 02C01-9607-CR-00223, 1998 Tenn. Crim. App. LEXIS 184 (Tenn. Crim. App. Feb. 12, 1998).

In 2010, the petitioner filed a Motion for Post-Conviction DNA Testing of the butcher knife believed to have been used in the crimes. After conducting a non-evidentiary hearing, the post-conviction court denied the request for relief, explaining that because the knife had "been in evidence for two decades," had "been moved numerous times," and had "not been maintained in a sterile or protected container," it was not "in a condition that a conclusive DNA analysis may be conducted." The petitioner appealed to this court, claiming that the knife was in sufficient condition to permit DNA analysis and, if the analysis linked any DNA found on the knife to the DNA of a documented offender in the CODIS database,[1] such a match would exculpate the petitioner. This court remanded the case to the post-conviction court to make additional findings consistent with the then-recently-decided opinion of our supreme court in *Powers v. State*, 343 S.W.3d 36, 56 (Tenn. 2011). *See Ricky Nelson v. State*, No. W2010-02088-CCA-R3-PC, 2011 Tenn. Crim. App. LEXIS 915 (Tenn. Crim. App. Dec. 14, 2011).

Upon remand, on February 2, 2012, the post-conviction court held what it intended to be an evidentiary hearing concerning the petition. The petitioner, however, declined to call any witnesses and instead requested that the post-conviction court take judicial notice of certain cases that it had identified. After some further discussion, post-conviction counsel requested the opportunity to submit an affidavit from an expert concerning whether it would be possible to test the knife for DNA. The transcripts reflect that the post-conviction court did not respond to the request, but on February 21, 2012, post-conviction counsel filed a Motion to Supplement Record with Gary Harmor's Affidavit, accompanied by said affidavit. We presume that the post-conviction court granted this motion, as the affidavit was referenced and discussed in the court's order disposing of the matter.

In his affidavit, Mr. Gary Harmor, an expert in forensic serology and DNA analysis, opined that it was impossible to determine in advance of any actual DNA testing whether such testing would "actually produce reliable and probative DNA results." However, he further opined that it was "*possible*" (emphasis in original) that: (1) skin cells from the assailant had been transferred to the knife handle during the assault; (2) modern DNA testing

---

[1] The Combined DNA Index System ("CODIS") is a computer software program that allows DNA-related information to be shared between state and local law enforcement agencies and the FBI. *See Powers v. State*, 343 S.W.3d 36, 45 (Tenn. 2011). CODIS contains two indexes: a convicted offender index, which contains the DNA profiles of persons convicted of particular crimes, and the forensic index, which contains DNA profiles obtained from crime scene evidence.

could determine the assailant's DNA profile from such skin cells; (3) any profile so obtained could be sufficiently developed to permit the profile to be compared to those in the CODIS database; (4) any handling of the knife by the prosecutor or defense lawyer during the defendant's trial had not so contaminated the DNA profile that testing would be inconclusive; and (5) the passage of twenty-three years would not inhibit the DNA testing. In opining on these five subjects, Mr. Harmor expressly assumed that the knife had been stored in a secure facility since the trial and had not been tampered with or exposed to harsh conditions "such as water damage, mold/mildew, high humidity, heat, etc." Mr. Harmor concluded by stating that with those *caveats* and based on the material he had reviewed, it was his expert opinion that "the knife handle is in such a condition that DNA analysis may be conducted" (internal quotations omitted).

On March 8, 2012, the post-conviction court issued an order denying the petitioner's motion for DNA testing. The post-conviction court ruled that the petitioner had not established that two of the four statutory factors necessary to qualify for DNA analysis were satisfied. Specifically, based on the record before it, the post-conviction court found that the evidence sought to be tested was not "in such a condition that DNA analysis may be conducted" and that there was no reasonable probability "that the petitioner would not have been prosecuted or convicted if exculpatory results have been obtained through DNA analysis." T.C.A. § 40-30-304(1) & (2). The post-conviction court explained:

> There is no proof before this Court as to the condition of the knife at this time. The parties agree that it is in the custody of the Criminal Court Clerk. Petitioner, in an Affidavit of Gary Harmor, suggests that the knife is in a suitable condition for testing. The affidavit states in section (6)(f.)(ii) that the opinion "is premised on the notion that the knife handle has been kept in a secure facility, has not been tampered with or materially altered, and that it has not been exposed to harsh environmental conditions (i.e. water damage, mold/mildew, high humidity, heat, etc.)."

> The State maintains, in their Response that "there was no attempt to prevent contamination of this item by sealing it in some kind of protective bag or covering." They argue that it is not in a condition for testing.

> A Petitioner is required to "present scientific proof demonstrating that DNA analysis is possible when the state argues otherwise . . . [."] Powers, supra at 59. Further, this is directly quoted in the *Nelson*, DNA-PPCR opinion at page 7.

> Petitioner has chosen to undertake this effort with the Affidavit of Gary

-4-

Harmor. In his affidavit, Mr. Harmor bas[es] his opinion that DNA testing on the knife handle might reveal the profile of the assailant on this "understanding" that there is no evidence in the record indicating or establishing that the knife handle has been ["]tampered with or materially altered." Based upon these factors he feels that it might be possible to identify the assailant's DNA.

It is critical to consider the type of DNA source that is the basis of this request. This request is based on the possibility that skin cells containing the requisite DNA source materials have been transferred to the knife handle by one holding the knife. From the record, this knife has been handled, at least intermittently, for the last twenty-three years. This is distinguishable from limits contained on sheets, underwear or rape kits collected from victims. In those instances, it can be assumed that the DNA bearing material, not only came from the item in evidence, but that it was deposited upon those items at the time of the commission of the crime.

In the case at hand, if an unknown DNA source were to be found on the knife, there is no way to ascertain when it came in contact with the knife. There must be a connection between the item tested, the crime scene and the time of the crime for the location of DNA belonging to someone "other than Petitioner" to be exculpatory.

It is clear under Powers, supra, that a sample that was located on the knife could be submitted into the CODIS database. Even the identification of the "alternate source" of the DNA would not answer the question of when [it] came in contact with the knife handle, or how.

At this point in time, the location of such "other" DNA would not create a reasonable probability that petitioner would not be prosecuted or convicted.

As to the second factor of T.C.A. § 40-34-304, this Court finds that Petitioner has not presented "scientific proof that DNA Analysis is possible." In its best light, Petitioner has shown that it is (sic) "might be possible", if certain factors were as assumed. There is no proof before this court, one way or another on which to base these assumptions.

The petitioner filed a timely notice of appeal concerning the post-conviction court's denial of his motion for DNA testing. Satisfied that the matter is properly before us, we proceed to consider the petitioner's claims.

-5-

# ANALYSIS

On July 18, 2001, our state passed the Post-Conviction DNA Analysis Act of 2001. *See* T.C.A. § 40-30-301 *et seq.* (2001) ("the Act"). The purpose of the Act was two-fold: to exonerate the wrongfully convicted and to identify the true perpetrators of their crimes. *See Powers*, 343 S.W.3d at 51. Toward this end, the main operative provision of the Act, Tennessee Code Annotated section 40-30-303, provides that:

> . . . a person convicted of and sentenced for the commission of first degree murder, second degree murder, aggravated rape, rape, aggravated sexual battery or rape of a child, the attempted commission of any of these offenses, any lesser included offense of these offenses, or, at the direction of the trial judge, any other offense, may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence.

T.C.A. § 40-30-303. The Act further provides that:

> After notice to the prosecution and an opportunity to respond, the court shall order DNA analysis if it finds that:
>
> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;
>
> (2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;
>
> (3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and
>
> (4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

T.C.A. § 40-30-304. The provisions of this section are mandatory, meaning that if the post-conviction court finds that they are satisfied, it is without discretion to deny DNA analysis. A related provision provides for DNA analysis in the post-conviction court's discretion if the

same factors are satisfied, but the results would only reduce the petitioner's offense level or sentence rather than completely exonerating him. *See* T.C.A. § 40-35-305.

The petitioner filed his present post-conviction petition for DNA analysis seeking relief under both of these sections. After the post-conviction court initially denied relief, the petitioner appealed, and this court reversed and remanded for reconsideration in light of our supreme court's recent decision in *Powers*. *See Nelson,* 2011 Tenn. Crim. App. LEXIS 915. After the post-conviction court again denied his petition, the petitioner filed the appeal at bar, arguing that the post-conviction court erred by denying his petition requesting DNA testing of the butcher knife used at his trial.

"Under either the mandatory or discretionary provision, all four elements must be met before DNA analysis will be ordered by the court." *Powers*, 343 S.W.3d 36 at 48. "The failure to meet any of the qualifying criteria is . . . fatal to the [petitioner's cause of] action." *William D. Buford v. State*, No. M2002-02180-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 370, at **16-17 (Tenn. Crim. App. Apr. 24, 2003). Consequently, "[i]f the state contests the presence of any qualifying criteria and it is apparent that each prerequisite cannot be established, the [post-conviction] court has the authority to dismiss the petition." *Id.* at *17. Due to the wide discretion afforded the post-conviction court by the Act, "[t]he scope of our [appellate] review is limited." *Jesse Haddox v. State*, No. M2003-00514-CCA-R3-PC, 2004 Tenn. Crim. App. LEXIS 991, at *6 (Tenn. Crim. App. Nov. 10, 2004). We review a post-conviction court's decision concerning whether to grant relief under an "abuse of discretion" standard. *See Thomas Edward Kotewa v. State*, No. E2011-02527-CCA-R3-PC, 2012 Tenn. Crim. App. LEXIS 872, at *15 (Tenn. Crim. App. Oct. 26, 2012).

The petitioner argues that the post-conviction court made an erroneous factual finding and misapplied the law when it concluded that the knife was not still in testable condition. The petitioner further argues that the post-conviction court applied an incorrect standard when it determined that the petitioner had failed to establish a reasonable probability that he would not have been prosecuted or convicted if exculpatory DNA results were obtained. For the reasons that follow, we conclude that the petitioner's claims merit relief.

**I.**

The petitioner claims that the post-conviction court erred by finding that the knife was not in a condition that would permit DNA testing, thus failing to satisfy the second prong of the test created by sections 40-30-304 and 40-30-305. As we have stated, we review post-conviction court's decision under an abuse of discretion standard. "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the

evidence, or relies on reasoning that causes an injustice." *Neal Lovlace et al. v. Timothy Kevin Copley et al.*, No. M2011-00170-SC-R11-CV, 2013 Tenn. LEXIS 718, at *29 (Tenn. Sept. 6, 2013) (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)).

The sole evidence presented to the post-conviction court by the parties concerning the condition of the knife was the affidavit of Mr. Gary Harmour. In that affidavit, Mr. Harmour stated that it was impossible to conclusively determine whether testable DNA could be recovered from the knife in advance of actually conducting the DNA testing. However, the expert opined that, assuming the knife had been stored in a reasonable manner over the years, it should still be in sufficient condition to permit testing. The State presented no evidence to rebut the expert's conclusions or establish that his assumptions concerning the manner in which the knife had been stored were unreasonable. To be clear, no trial court is required to accept all conclusions stated by a witness, expert or otherwise, but upon the facts of this case the evidence seems clear that the knife handle is suitable for testing. The trial court made many astute observations that will undoubtedly reflect upon the weight of any DNA results that may ultimately be found. However, the post-conviction court did abuse its discretion in denying the test.

The post-conviction court denied relief because "there [wa]s no proof before th[e] court, one way or another on which to base [the expert's] assumptions." The defendant now urges us that "the trial court incorrectly discounted the expert opinion of DNA analyst Gary Harmour as based on assumptions." We agree. The assumptions underlying Mr. Harmour's expert opinion were not so fantastical as to permit the post-conviction court to simply discredit his unchallenged and unrebutted testimony concerning the possibility of subjecting the knife to DNA testing. As stated in Mr. Harmour's affidavit, his opinions were based on his review of the pleadings in the petitioner's case, police reports, lab reports, and more than thirty years of experience in the field of serology and DNA analysis.

Mr. Harmour stated that it was his "understanding that the knife ha[d] been stored in the Shelby County Clerk's Office over the last twenty-two (22) years in a manila envelope and that the clerk's office is a secure facility," or "[i]n other words, [it was his] understanding that there is no evidence in the record indicating or establishing that the knife ha[d] been tampered with, altered, or exposed to harsh environmental conditions. . . ." The State neither challenged these assumptions nor presented any evidence that any of these assumptions were erroneous. With no evidence before the court to indicate that the expert's assumptions, which were based on his review of the record, were faulty, the post-conviction court erred by simply discrediting the expert's testimony based upon the court's speculation that the knife might not still be in testable condition because the State had made no specific efforts to prevent its contamination (such as sealing it in a protective bag). Such speculation is insufficient to establish that the statutory prerequisite at issue cannot be established; we

expect trial courts to make "a conscientious effort to determine the existence of the statutory conditions and ha[ve] substantial facts upon which to determine that [testable material is] no longer available" before dismissing a petition. *See Buford,* 2003 Tenn. Crim. App. LEXIS 370 at *18. In this case, the only evidence before the post-conviction court was Mr. Harmour's expert opinion, based upon his review of the case materials, that the knife handle was still in sufficiently good condition to permit DNA analysis. The post-conviction court abused its discretion by rejecting that evidence.

## II.

The petitioner also claims that the post-conviction court abused its discretion when it found that exculpatory DNA test results would not have rendered it "reasonably probable" that the petitioner would not have been prosecuted or convicted of the crimes at issue. We agree that the post-conviction court applied an incorrect legal standard and reached an erroneous result with respect to this statutory prerequisite.

As an initial matter, the petitioner claims that the post-conviction court applied an incorrect burden of proof, erroneously requiring exculpatory DNA test results to "conclusively prove" the petitioner's innocence in order to satisfy the requirements of factor (1). *See* T.C.A. § 40-30-303(1). With this assertion, we disagree. We acknowledge that there is some language appearing in the post-conviction court's written order that supports the defendant's view; at one point, the post-conviction court stated: "It is unclear whether the knife is in a condition to be tested, but even if it were, the results would not be of a conclusive nature." However, the post-conviction court later recited the proper standard, explaining that: "At this point in time, the location of such other DNA would not create a reasonable possibility that Petitioner would not be prosecuted or convicted." Reading the opinion as a whole, we do not believe the post-conviction court committed any error concerning the burden of proof required by section 40-30-303(1).

We agree, however, that the post-conviction court failed to properly postulate the most realistically possible test results, as required by *Powers*, when it conducted its factor (1) analysis. As our supreme court has explained, "'the trial court should postulate whatever realistically possible test results would be most favorable to [the petitioner] in determining whether he has established' the reasonable probability requirement." 343 S.W.3d at 51 (quoting *State v. Peterson*, 836 A.2d 821, 827 (N.J. Super. Ct. App. Div. 2003)). Our supreme court has made clear that "realistically possible" DNA test results include the possibility that testing will not only fail to identify the petitioner's DNA on the item tested but will also simultaneously identify the DNA profile of another known sex offender from the CODIS database. *Id.* at 57-58.

The post-conviction court properly acknowledged the necessity of assuming a positive CODIS identification of an offender other than the defendant, but then discounted the possibility that such results would have meaningfully affected the likelihood of an arrest or conviction by stating "[e]ven the identification of the 'alternate source' of the DNA would not answer the question of when [the previously-unidentified known sex offender] came into contact with the knife handle, or how." This logic strikes us as far too thin a reed on which to rest a determination that the most realistically possible favorable test results nonetheless fail to satisfy the reasonable probability standard. It is true, as the State suggests, that a "false positive" CODIS identification of another known sex offender could result from cross-contamination of the knife with other evidence or from even more fanciful scenarios, such as the police accidentally hiring a known sex offender to work in the evidence storage location or an accomplice of the petitioner's breaking into the storage area and tampering with the evidence. However, these arguments prove too much, as they could be equally applicable to virtually any cold case—little evidence was stored in a manner designed to prevent contamination or tampering in the era before DNA testing. Our supreme court gave no indication in *Powers* that mere nagging doubts such as these should suffice to defeat a petitioner's claim of reasonable possibility, and according such doubts controlling effect in a case such as this one is inconsistent with the court's duty when analyzing factor (1) to postulate the most favorable results possible for the petitioner.

We believe that language used by our supreme court in *Powers* is equally applicable to the case at bar:

> If we assume that only one DNA profile [of a known sex offender] is developed, and that profile does not match the petitioner's, we have no trouble concluding that a reasonable probability exists that the petitioner would not have been convicted. Such evidence would have cast the State's case, and the inference between the eyewitness identification, corroborative evidence, and presence of seminal fluid on [the victim's] underwear, in a completely different light. In our view, a reasonable probability exists that this evidence might serve to cast doubt as to the identification of the petitioner, notwithstanding the other evidence to the contrary.

*Id.* at 59. In this case, the petitioner was convicted primarily on the testimony of two "eyewitnesses" to this crime, one of which did not actually see the crime but only heard the petitioner's voice over the phone shortly before the crime was committed. There were no fingerprints, there was no DNA evidence connecting the petitioner to the crime, and there was not a mountain of circumstantial evidence inculpating the petitioner. While the testimony of one or two eyewitnesses is sufficient to support the petitioner's conviction against a challenge to the sufficiency of the evidence, to be sure, it is not enough, standing

alone, to ensure with any certainty that the petitioner's jury would have ignored clear DNA test results excluding the petitioner while simultaneously linking another known sex offender to the handle of the knife brandished during the crimes. Thus, we hold that the post-conviction court erred when it determined that, assuming DNA test results identified the DNA of another known sex offender on the knife handle and excluded his own, the petitioner failed to establish a reasonable possibility that he would not have been prosecuted or convicted.

## CONCLUSION

Because the four criteria of Tennessee Code Annotated section 40-30-304 have been satisfied, the judgment of the post-conviction court is reversed and the case is remanded for entry of an order granting the requested DNA analysis.

_____
JOHN EVERETT WILLIAMS, JUDGE