260 N.J. Super. 531 (1992)
617 A.2d 272
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NORWOOD L. WHITE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1992.
Decided November 17, 1992.
*532 Before Judges BILDER and BAIME.
Fredric J. Gross, Designated Attorney, argued the cause for appellant (Zulima V. Farber, Public Defender, attorney; Fredric J. Gross, on the brief).
Carol M. Henderson, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, *533 attorney; Carol M. Henderson, of counsel and on the letter-brief).
The opinion of the court was delivered by BAIME, J.A.D.
Defendant appeals from the denial of his motion to compel the State to make available for independent forensic testing a T-shirt that was seized by the police at the time of his arrest approximately 18 years ago. The T-shirt was admitted into evidence at defendant's trial in 1976. Defendant was convicted of rape (N.J.S.A. 2A:138-1), breaking and entering with intent to rob (N.J.S.A. 2A:94-1), armed robbery (N.J.S.A. 2A:141-1 and N.J.S.A. 2A:151-5), and threatening to kill (N.J.S.A. 2A:113-8), and was sentenced to an indeterminate term not to exceed 30 years at the Adult Diagnostic and Treatment Center plus between 32 and 47 years in State Prison.[1] The Law Division judge treated defendant's motion as a petition for post-conviction relief. In a thorough and well reasoned letter-opinion, Judge Mahon found that defendant's petition was procedurally barred and was substantively without merit. We agree and affirm the Law Division's order substantially for the reasons expressed by the judge in his letter-opinion.
We need not recount the lurid details of the brutal, late night rape of the victim in her home. Suffice it to say, after robbing the victim at knife point, the perpetrator placed a paper bag over her head and proceeded to rape her three times. The victim was able to observe the man's clothing and told the police that he had taken two $20 dollar bills which were folded in a somewhat unusual manner. Defendant, who fit the victim's *534 description of the assailant, was arrested near the scene shortly after the crimes were committed. A search of his person revealed a knife and two $20 dollar bills which were folded in the manner described by the victim. We have no occasion to describe in detail additional evidence that was presented against defendant at trial. We merely note that the State's case, though circumstantial, was extremely strong. It can fairly be said that the evidence against defendant was overwhelming.
Among the items seized at the time of defendant's arrest was the semen stained T-shirt he was wearing. When the stain was tested at the State Police laboratory, it reacted "positive" for the presence of human semen, with a blood type O finding. However, when a control sample from the garment was tested, it also reacted for the presence of blood type O, indicating that the shirt had somehow become contaminated. Thus, the prosecutor considered the scientific results in both tests to be unreliable and inconclusive.
Defendant's trial attorney was fully informed of the test results, including the blood type O finding. There is no question that she discussed this information with defendant who she knew had type A blood. Fully aware of these facts, defense counsel entered into a stipulation with the State with respect to the laboratory results. As part of the stipulation, defendant did not dispute the chain of custody and the State did not mention any of the blood grouping findings. In subsequent post-conviction hearings, defense counsel, a highly experienced criminal lawyer of some renown, explained her reasoning. We need not describe her testimony in detail, because the issue of her alleged ineffectiveness has been decided against defendant in both the federal and state courts. We merely note that she was concerned with the possibility the jury might be prejudiced by evidence indicating defendant was wearing a T-shirt with semen stains from another male. The attorney believed the jury might speculate that defendant had been involved in other criminal or homosexual activities. We add that defense counsel's *535 strategic decision seems entirely reasonable under the circumstances.
The lengthy and convoluted procedural history that followed defendant's conviction requires some comment. During the past 16 years, defendant has filed a plethora of appeals, motions and post-conviction petitions in both the state and federal courts, challenging various aspects of the trial proceedings. Charges of incompetence and worse have been levelled against defendant's trial attorney, the prosecutor, laboratory technicians, and members of the State Police. Lengthy hearings have been conducted and defendant's claims of unfairness have been found to be factually and legally wanting. We are compelled to note that defense counsel in his brief and during oral argument has repeatedly chosen to ignore prior judicial findings and to reargue points that were decided against him long ago. Repetition of defendant's lengthy list of charges does not give them credibility.
It would be superfluous to describe all of the appeals, petitions and motions that have been filed since defendant was convicted. The following description briefly outlines the main currents of the proceedings defendant has generated after entry of his convictions. Defendant first filed a direct appeal to this court, contending that his trial attorney was ineffective and that he was induced to enter into the stipulation regarding the semen stains by reason of prosecutorial fraud and misconduct. We rejected these arguments in an unreported opinion. The Supreme Court then denied defendant's petition for certification. Defendant filed a petition for a writ of habeas corpus which was dismissed by the United States District Court for failure to exhaust state remedies.
Defendant filed a second petition for a writ of habeas corpus in which he apparently asserted that the State had withheld the laboratory report which indicated that the semen stain on the T-shirt reacted "positive" to blood type O. He also claimed that his trial attorney was ineffective because she failed to obtain *536 the report. United States Magistrate John Devine issued a report recommending dismissal of defendant's petition on the basis that the dispute over the origin of the semen stains on the T-shirt was irrelevant:
Even assuming that those [semen] stains were as petitioner contends, thereby demonstrating that the person from whom they came was not he, that circumstance is irrelevant to this petition. Put another way, petitioner's conviction and resulting restraint of liberty did not proceed from a determination as to the source of the fluid which had made the stains on the T-shirt he was wearing when arrested.
In the context of this application it is apparent that whether the semen stains on petitioner's T-shirt were his or those of another is totally irrelevant. It follows that no merit is found in petitioner's contention that he was denied the effective assistance of counsel because his trial attorney failed to secure a laboratory report which contained exculpatory evidence.
The United States District Court subsequently adopted Magistrate Devine's report and dismissed defendant's petition.
Defendant then filed his first petition for post-conviction relief in the Law Division. The thrust of his claim was that the prosecutor had concealed information concerning another rape committed about a month earlier than the one for which he was convicted in this case. The facts pertaining to the earlier rape need not be recited here except to note that the sexual attack involved bestiality and other horrible elements. The semen samples from the panties of the victim in the earlier rape showed type O blood. However, the semen may have been from the perpetrator, from the husband, from the dog, or from some contaminated combination of the three. The Law Division determined that this evidence was not exculpatory because the two crimes were entirely different and no inference could be drawn that they were committed by the same perpetrator. We affirmed in a reported opinion. State v. White, 227 N.J. Super. 443, 547 A.2d 1131 (App.Div. 1988). The Supreme Court dismissed defendant's appeal.
Questions concerning the semen stains on the T-shirt were raised again in defendant's third petition for a writ of habeas corpus filed in 1989. In the course of those proceedings, defendant filed a motion seeking the exact same relief he later *537 requested in the petition for post-conviction relief which is the subject of this appeal. Specifically, defendant sought an order compelling scientific testing of semen stains on the T-shirt. In dismissing defendant's petition and denying his motion, United States District Court Judge Garrett Brown found that scientific testing of the semen stain on the T-shirt could not conceivably produce exculpatory evidence. At best, the test result would reveal that the semen was type O and was not that of the defendant. The court found that such evidence would have no logical tendency to exculpate defendant. It would merely show that the semen on defendant's T-shirt was not his own.
Defendant then filed the motion which is the subject of this appeal. In his supporting certification, defense counsel rehashed many of the factual claims he had raised previously. Among these allegations, counsel again asserted that a member of the State Police had falsified information concerning the laboratory test results, that the same perpetrator committed both the rape of the victim here and the earlier rape because the modus operandi was similar, that there was a "serious question" as to whether the semen on the T-shirt came from the defendant, and, most critically, that "if the semen on the T-shirt reacts for blood type O, it is not Mr. White's semen and it does not rationally support an inference that he is the person who committed the charged crimes."
The Law Division denied defendant's petition on the basis that this issue had been raised in prior proceedings and had been authoritatively resolved. In the course of his opinion, the judge observed that our decision in State v. Thomas, 245 N.J. Super. 428, 586 A.2d 250 (App.Div. 1991), where a panel of this court, over a vigorous dissent, held that DNA testing should be made available to a defendant in post-conviction relief proceedings, was distinguishable. The Law Division alternatively found that Thomas should not be retroactively applied.
This appeal followed. Our thorough review of the voluminous record convinces us that defendant's arguments lack *538 merit. We agree with the Law Division judge's reasoning except with respect to the question of Thomas's retroactivity. We have no occasion to decide the latter point.
Our recitation of the tortuous history of this case clearly discloses that defendant's claim was procedurally barred by (1) R. 3:22-3, which states that a petition for post-conviction relief is not a substitute for an appeal, (2) R. 3:22-5, which provides that a prior adjudication on the merits is conclusive, and (3) R. 3:22-12, which requires that a petition be filed within five years of the rendition of the judgment. We emphasize that the motion filed in the Law Division mirrors that considered and denied by the United States District Court. A federal court dismissal that directly determines a right in issue precludes relitigation of the question in the state courts. Velasquez v. Franz, 123 N.J. 498, 507, 589 A.2d 143 (1991). See also McCarthy v. Warden, State Prison, 213 Conn. 289, 295, 567 A.2d 1187, 1189-90 (1989), cert. denied, 496 U.S. 939, 110 S.Ct. 3220, 110 L.Ed.2d 667 (1990). An issue once decided, even of constitutional dimensions, may not be relitigated. See State v. Trantino, 60 N.J. 176, 180, 287 A.2d 177 (1972); State v. Smith, 43 N.J. 67, 74, 202 A.2d 669 (1964), cert. denied, 379 U.S. 1005, 85 S.Ct. 731, 13 L.Ed.2d 706, reh. denied, 380 U.S. 938, 85 S.Ct. 945, 13 L.Ed.2d 826 (1965). We agree with Judge Mahon that defendant's motion was just another attempt to relitigate an issue that had already been decided. See State v. Rosen, 110 N.J. Super. 216, 219, 265 A.2d 152 (App.Div. 1969), aff'd, 56 N.J. 89, 265 A.2d 142 (1970). It is also abundantly plain that defendant has repeatedly attempted to use post-conviction relief applications as a substitute for appeal, see State v. Cerbo, 78 N.J. 595, 397 A.2d 671 (1979), and that the present petition was filed well beyond the time constraints provided by R. 3:22-12. The Law Division judge was correct in his conclusion that defendant's petition was procedurally barred.
*539 So too, we regard as disingenuous defendant's claim that the action in the Law Division was really one of replevin and did not implicate our rules of procedure governing post-conviction relief. The caption of the motion stated that it was a criminal action. The cases cited and arguments made all pertained to the criminal law. This is not a property case. Even if it were, defendant's active pursuits in seeking to have his convictions reversed would mandate that the prosecutor's file be preserved. The simple and overriding fact is that the State's need for the property as evidence continues. United States v. Van Cauwenberghe, 934 F.2d 1048, 1061 (9th Cir.1991), aff'g United States v. Van Cauwenberghe, 827 F.2d 424 (9th Cir.1987), cert. denied, 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).
Putting all this aside, we come to an old topic  the finality of judgments in criminal cases. We begin this analysis with several prefatory comments. Orderly processing of cases through the court is an important value, but it is not the end in itself. Instead, it is the method by which we attempt to achieve the ultimate purpose of our system of criminal justice  the fair conviction of the guilty and the protection of the innocent. State v. Thomas, 245 N.J. Super. at 435, 586 A.2d 250. Within that context, it may reasonably be asked why we should not put procedural rules aside and provide every possible avenue for a convicted defendant to prove his innocence.
The answer here is clear. First, a conclusive finding that the semen on defendant's T-shirt was not his own would have no exculpatory impact. We stress that the semen stains appeared on the clothes defendant was wearing, not on those belonging to the victim. The tests defendant seeks would not prove his innocence. Nor would they have any logical tendency to establish that thesis. Although such evidence could perhaps have been used to rebut the prosecutor's suggestion that defendant was the source of the semen, defense counsel had the means to pursue that inquiry at trial, and refused to do so for tactical reasons.
*540 Second, we would be myopic if we saw no more than the defendant before us. A substantial segment of the public doubts the capacity of the judicial process to deal with the demands of law enforcement. The reasons are several, but one is the lengthening line of decisions that fails to accord finality to the determination of juries in criminal cases. While no one currently disputes the desirability of the time constraints and procedural bars contained in our rules governing post-conviction relief, see State v. Mitchell, 126 N.J. 565, 601 A.2d 198 (1992), the extent to which they are enforced seems to depend on the varying moods of our decisions. The public is understandably confused when a conviction is vitiated long after the jury's verdict has been rendered and direct appeals have been decided.
The problem is most acute when the strategic and tactical decisions of the defendant's trial attorney are questioned long after the fact. Such challenges, often made from the vantage point of twenty-twenty hindsight, come to us with numbing frequency. Here, for example, defendant's present counsel has implicitly attacked a strategic decision made by his lawyer some 16 years ago. Trial counsel knew full well that defendant was probably not the source of the semen which appeared on his T-shirt, but she purposely desired suppression of this evidence, reasoning it could do more harm to her client than good. That decision deserves finality.
It would tear at the very roots of trial counsel's responsibility were we to routinely question the soundness of strategic decisions long after they were made. An attorney's strategic and tactical determinations must have consequences. If such decisions can later be challenged by a disgruntled litigant and a reversal obtained, trial counsel will have little motivation to carefully consider the alternative courses he or she may take. Indeed, the client, and derivatively the attorney, may ultimately derive a benefit by virtue of a tactical blunder.
*541 This potential danger is not as ephemeral as it first may appear. By recognizing a defendant's belated challenge to a course reasonably pursued by his trial attorney, we reward a litigant who sought and received a tactical advantage at trial. We encourage the defense bar to "lie in wait," State v. Thomas, 245 N.J. Super. at 440, 586 A.2d 250 (Baime, J.A.D., dissenting), knowing that the attorney's strategic decisions may later be questioned and altered depending upon the result. In our view, counsel's responsibility should not be so easily diluted.
Every book must have its final chapter. This saga too must end. We are thoroughly convinced that the Law Division was correct in denying defendant's motion. Accordingly, the order of the Law Division is affirmed.
NOTES
[1] On July 5, 1991, defendant was resentenced on the rape conviction, pursuant to Gerald v. Com'r, New Jersey Dept. of Corrections, 201 N.J. Super. 438, 493 A.2d 556 (App.Div. 1985), aff'd as mod., 102 N.J. 435, 508 A.2d 1113 (1986), to a 20 year term, with a 10 year period of parole ineligibility. Defendant's appeal from this resentencing is currently pending before this court. State v. White, Docket No. A-245-91T5.