**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3820-17T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MANUEL P. RODRIGUEZ, a/k/a
MANUEL RODRIQUEZ,

      Defendant-Appellant.

_____

Submitted December 18, 2019 – Decided December 30, 2019

Before Judges Haas and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 14-07-1796 and 15-01-0074.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

An Essex County grand jury returned an eleven-count indictment[1] charging defendant Manuel Rodriguez and his brother, Jenssy,[2] with two counts of second-degree conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:12-1(b)(1) (counts one and seven); three counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (counts two, eight, and ten); three counts of second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (counts three, nine, and eleven); second-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3(a)(1) (count four); first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a)(1) (count five); and second-degree possession of a handgun, N.J.S.A. 2C:39-5(b) (count six). The grand jury returned a second indictment[3] charging defendant with second-degree certain persons not to possess a handgun, N.J.S.A. 2C:39-7(a). Prior to trial, the trial judge granted the State's motion to dismiss counts seven through eleven of Indictment No. 15-01-0074.

---

[1] Indictment No. 15-01-0074.

[2] Because defendant and his brother share the same surname, we refer to defendant's brother by his first name, Jenssy, in order to avoid confusion. In doing so, we intend no disrespect.

[3] Indictment No. 14-07-1796.

A-3820-17T2

Defendant and Jenssy were tried together on the remaining counts of this indictment. Following the trial, the jury found defendant guilty of counts two, three, five, and six, and not guilty of counts one and four. The jury acquitted Jenssy of all six counts. After the verdict, defendant pled guilty to the certain persons charge in Indictment No. 14-07-1796. Pursuant to the parties' plea agreement on that charge, the State agreed to recommend that the judge sentence defendant to a five-year term subject to a five-year period of parole ineligibility to run concurrent to the sentence to be imposed under Indictment No. 15-01-0074.

Prior to sentencing, defendant filed a motion seeking to compel that a DNA test be conducted of a jacket found at the crime scene that the State had not introduced in evidence at trial. The judge denied this motion.

Approximately one year after the jury rendered its verdict, but still prior to sentencing, the judge received a letter from an individual purporting to have been the jury foreperson. Defendant filed a motion seeking to interview the juror, and the judge denied this request.

At sentencing, the judge merged counts two and three of Indictment No. 15-01-0074 into count five, and sentenced defendant to eighteen years in prison, subject to an eighty-five percent period of parole ineligibility, and five years of

3

parole supervision pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The judge imposed a concurrent ten-year term, with a five-year period of parole ineligibility, on count six of Indictment No. 15-01-0074; and a concurrent five-year term, with a five-year period of parole ineligibility for the certain persons charge under Indictment No. 14-07-1796. Thus, defendant's aggregate term was eighteen years, subject to NERA. This appeal followed.

On appeal, defendant raises the following contentions:

> POINT I
>
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR POST-CONVICTION DNA TESTING OF A JACKET FOUND AT THE SCENE OF THE SHOOTING PURPORTED BY POLICE TO BELONG TO THE SUSPECT.
>
> POINT II
>
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR LEAVE TO INTERVIEW A JUROR WHO, POST-VERDICT, SENT A LETTER TO THE TRIAL COURT EXPRESSING THAT THE VERDICT WAS "RUSHED AND WRONG" AND WHO CONTENDED THAT HER VOTE OF GUILT DID NOT REFLECT HER DETERMINATION.
>
> POINT III
>
> DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE AND MUST BE REDUCED.

A-3820-17T2

After reviewing the record in light of these contentions, we affirm.

I.

The parties are fully familiar with the evidence presented at trial. Therefore, we need only recite the most salient facts related to the issues raised on appeal.

At approximately 10:00 p.m. on November 9, 2013, the victim was walking home from a restaurant. As she did so, the victim saw defendant and Jenssy walking toward her. The victim knew Jenssy well and had been friends with him for several years. While the victim did not know defendant personally, she knew defendant was Jenssy's brother and went by nickname "Pito."

Jenssy walked by the victim first, and the two exchanged hellos. The victim then began to cross the street, and saw defendant moving across the street toward her. Defendant told the victim to "come here" three times, but she refused to do so. The victim looked back at defendant after he spoke to her the third time, and saw he had taken out a handgun. Defendant shot the victim in the neck, and she began to run toward her apartment house. As she ran, the victim continued to hear gunshots.

When she got to the house, a neighbor let the victim into his apartment, and she called the police. When the officers responded, they found the victim

5

on the floor of the apartment. She was bleeding profusely and gasping for air. A medical trauma expert testified the victim had five bullet wounds to her neck and right shoulder, and that these wounds were "very serious and potentially life threatening[.]"

The police recovered twenty-four shell casings at the scene which were identical to each other and were fired from the same handgun. The police also found a bullet fragment and a dark-colored jacket. The police later discovered there was a surveillance video of the entire incident. Because of that, the police did not submit jacket for DNA analysis, or offer it in evidence at trial.

Although the victim could not speak for approximately one month after the shooting, she was able to communicate with detectives in writing and by responding to yes or no questions. The victim reported that defendant and Jenssy were her assailants, and later identified photographs of the two men. The victim also pointed out defendant and Jenssy at trial.

II.

In Point I of his brief, defendant argues that the judge abused her discretion by denying his post-verdict, pre-sentence motion to require DNA testing of the jacket the police seized at the crime scene, but did not introduce in evidence. This contention lacks merit.

6

In support of his motion, defendant relied upon N.J.S.A. 2A:84A-32a, which permits "'any person who was convicted of a crime and is currently serving a term of imprisonment'[4] to make a motion for DNA testing." State v. Hogue, 175 N.J. 578, 584 (2003) (alteration in original) (quoting N.J.S.A. 2A:84A-32a). However, the trial court "shall not grant the motion . . . unless" the defendant has established:

> (1)    the evidence to be tested is available and in a condition that would permit the DNA testing that is requested in the motion;
>
> (2)    the evidence to be tested has been subject to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced or altered in any material aspect;
>
> (3)    the identity of the defendant was a significant issue in the case;
>
> (4)    the eligible person has made a prima facie showing that the evidence sought to be tested is material to the issue of the eligible person's identity as the offender;
>
> (5)    the requested DNA testing result would raise a reasonable probability that if the results were favorable to the defendant, a motion for a new trial based upon newly discovered evidence

---

[4] Although defendant had been convicted prior to filing his motion, he had not yet been sentenced. Therefore, N.J.S.A. 2A:84A-32a is not strictly applicable. However, because the State does not specifically raise this argument in opposition to defendant's appeal, we will address defendant's contention on this point.

would be granted. The court in its discretion may consider any evidence whether or not it was introduced at trial;

(6)     the evidence sought to be tested meets either of the following conditions:

(a)     it was not tested previously;

(b)     it was tested previously, but the requested DNA test would provide results that are reasonably more discriminating and probative of the identity of the offender or have a reasonable probability of contradicting prior test results;

(7)     the testing requested employs a method generally accepted within the relevant scientific community; and

(8)     the motion is not made solely for the purpose of delay.

[N.J.S.A. 2A:84A-32a(d).]

"It is defendant's burden to establish that all of the elements necessary for DNA testing have been fulfilled." State v Armour, 446 N.J. Super. 295, 311 (App. Div. 2016) (citing State v. Peterson, 364 N.J. Super. 387, 392-93 (App. Div. 2003)).

N.J.S.A. 2A:84A-32a(d)(5) "does not require a defendant to 'prove the DNA results will be favorable, rather it must only be established that there is a reasonable probability that a new trial would be granted if the DNA results are

8

favorable to the defendant.'" Ibid. (quoting State v. Reldan, 373 N.J. Super. 396, 402 (App. Div. 2004)). "Thus, the 'reasonable probability' requirement set forth in subsection (d)(5) 'applies only to the grant of a new trial in the event the results of DNA testing are favorable.'" Armour, 446 N.J. Super. at 311-12 (quoting State v. DeMarco, 387 N.J. Super. 506, 517 (App. Div. 2006)).

As for whether favorable DNA test results would likely result in the grant of a motion for a new trial, the same standards apply as for any newly discovered evidence. Peterson, 364 N.J. Super. at 398. As we have held:

> [W]here a new trial is sought premised on the discovery of "new" evidence, the evidence must be: (1) material to the issue and not merely cumulative, impeaching or contradictory; (2) discovered after the trial and not reasonably discoverable prior thereto; and (3) of a nature as to probably have affected the jury's verdict.
>
> [Armour, 446 N.J. Super. at 312 (citation omitted).]

Applying these principles, the trial judge properly concluded that defendant failed to demonstrate there was a "reasonable probability that a new trial would be granted if the DNA results [were] favorable to . . . defendant." Id. at 311. As the judge found, the State did not rely on the jacket to tie defendant to the crimes involved in this case. Instead, it presented the uncontradicted testimony of the victim, who named defendant as her assailant

A-3820-17T2

in the hospital after the shooting, picked him out of a photo array, and identified him again at the trial.

Under these circumstances, the lack of defendant's DNA on the jacket would not have affected the jury's verdict. Indeed, all it would prove would be that the jacket, which the State did not even introduce in evidence, did not belong to defendant. Because DNA testing "would neither exculpate . . . defendant nor inculpate another person[,]" the judge correctly denied defendant's motion to require such testing. Id. at 315. Therefore, we reject defendant's contention on this point.

III.

In Point II of his brief, defendant argues that the judge erred by denying his motion for leave to interview a juror. We disagree.

One year and two days after the jury rendered its verdict, an individual purporting to have been the jury foreperson sent a handwritten letter to the judge. The letter stated:

> I was the number one juror in the Manuel and Jenssy Rodriguez case . . . Jenssy Rodriguez was found not guilty and Manuel Rodriguez was found guilty[.] My judg[]ment to find Manuel guilty was wrong[,] I feel like both brothers should have been [found] not guilty. I say that because of the lack of evidence in the case and the eyewitness picked a man she said she only saw once or twice before. The State . . . had us try a case

10

with no motive. As the number one juror I felt like our decision was rushed and wrong, most of the jurors wanted to let both brothers go. My decision of guilty on Manuel . . . has bothered me since the case started and I'm hoping my letter makes a difference for his future. If I had to try this case again[,] I would find Manuel "Not Guilty." Please take this letter into consideration for a retrial or an acquittal.

The judge denied defendant's motion to interview the juror because "[a]bsent any outside taint, a change of heart is insufficient for the [c]ourt to investigate the thorough process which induced a particular juror to join in a particular verdict." The judge explained that

[t]he record is also void of any indication that [the juror] was overborne by improper actions of any of the other jurors. A court should not investigate the thought process, which included a particular . . . juror to join a verdict, particularly when there is nothing in the record indicating that the juror voted for a guilty verdict merely because his or her will was overborne by improper actions by other jurors.

We discern no basis for disturbing this reasoned determination.

Our courts have long recognized a privilege against disclosure of a jury's deliberations in order to maintain the secrecy that ensures free communication and independence in the jury room. State v. Athorn, 46 N.J. 247, 250-51 (1966). To protect the confidentiality of jury deliberations, Rule 1:16-1 prohibits the parties and any attorney from interviewing jurors, "[e]xcept by leave of court

granted on good cause[.]" "More than a mere possibility of a tainted verdict must exist to satisfy the good cause requirement." State v. Young, 181 N.J. Super. 463, 469 (App. Div. 1982).

Three reasons support this strong policy against overturning jury verdicts based on the details of deliberations. First, "disappointed litigants would be encouraged to tamper with jurors, to harass them and to employ fraudulent practices in an effort to induce them to repudiate their decisions." Athorn, 46 N.J. at 250. Second, adopting a contrary policy would be tantamount to "an open invitation . . . to any disgruntled juror who might choose to destroy a verdict to which he had previously assented." Ibid. Third, the general refusal to subject jurors to interrogation over their reasons for joining the verdict seeks to foster open, honest, and vigorous deliberations. State v. Difrisco, 174 N.J. 195, 241 (2002).

Generally speaking, the courts have recognized two exceptions to the rule that evidence from jury deliberations will not warrant a new trial. First, if it appears that racial or religious bigotry infected deliberations, a new trial is warranted. State v. Koedatich, 112 N.J. 225, 288 (1988). Second, a new trial may be granted "when a juror misinforms his or her colleagues in the jury room

about the facts of the case based on his personal knowledge of facts not in evidence." Ibid.

"[C]alling back jurors for interrogation after they have been discharged is an extraordinary procedure which should be invoked only upon a strong showing that a litigant may have been harmed by jury misconduct." Ibid. The strictness with which this rule is applied is demonstrated by the facts of Athorn. There, the juror asserted several improprieties. He stated other jurors harassed him when he refused to vote guilty, that he was confused by the trial judge's instructions, and that he was tricked into voting guilty. Athorn, 46 N.J. at 249-50.

The Supreme Court reversed the trial court's order calling the jurors back for questioning, concluding that "even if [the juror's allegations] were to be substantiated," there would not be a sufficient basis to overturn the verdict. Id. at 250. The Court reasoned that the case did not fall into one of the aforementioned exceptions, and thus offered "no reason for departing from the general rule" against inquiring about the content of jury deliberations. Id. at 252. Additionally, there was no evidence that the repudiating juror's will was overborne by improper actions on the part of the rest of the jury. Id. at 253.

We concur with the trial judge's application of these principles in the case at hand.  Assuming for the sake of argument that the individual who sent the letter to the judge had been the foreperson of the jury, she failed to identify any outside influence or juror misconduct that may have affected the jury's deliberations.  Instead, the individual merely stated she would now reach a different verdict if permitted to consider the case for a second time.  Under <u>Athorn</u> and its progeny, this was clearly insufficient to warrant the extraordinary relief defendant sought.  Therefore, the judge correctly denied defendant's motion for leave to interview the juror.

IV.

Finally, defendant asserts in Point III of his brief that his sentence was excessive.  We disagree.

Trial judges have broad sentencing discretion as long as the sentence is based on competent credible evidence and fits within the statutory framework. <u>State v. Dalziel</u>, 182 N.J. 494, 500 (2005).  Judges must identify and consider "any relevant aggravating and mitigating factors" that "are called to the court's attention[,]" and "explain how they arrived at a particular sentence."  <u>State v. Case</u>, 220 N.J. 49, 64-65 (2014) (quoting <u>State v. Blackmon</u>, 202 N.J. 283, 297 (2010)).  "Appellate review of sentencing is deferential," and we therefore avoid

14

substituting our judgment for the judgment of the trial court. Id. at 65; State v. O'Donnell, 117 N.J. 210, 215 (1989); State v. Roth, 95 N.J. 334, 365 (1984).

We are satisfied the judge made findings of fact concerning aggravating and mitigating factors that were based on competent and reasonably credible evidence in the record and applied the correct sentencing guidelines enunciated in the Code. Accordingly, we discern no basis to second-guess the sentence.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3820-17T2