**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1403-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DONALD PRATOLA,

     Defendant-Appellant.

_____

Submitted October 13, 2020 – Decided November 19, 2020

Before Judges Hoffman and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. SGJ-2-80.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (William P. Cooper-Daub, Deputy Attorney General, of counsel and on the brief; Lila B. Leonard, Deputy Attorney General, on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Donald Pratola appeals from an August 17, 2018 Law Division order denying his post-conviction motion to compel the submission of DNA evidence to the Combined DNA Index System (CODIS) under N.J.S.A. 2A:84A-32(a). We affirm.

On January 11, 1979, three men broke into a funeral home in Irvington and while attempting to commit a theft, shot and killed the funeral home's proprietor, Henry Rezem. In October of 1980, a grand jury returned an indictment, charging defendant with the murder of Mr. Rezem as well as attempted robbery and related crimes.

At defendant's trial, which commenced on March 16, 1981, the State presented testimony from the victim's wife, Hedwig Rezem, who provided out-of-court and in-court identifications of defendant. Ms. Rezem testified that on the morning of the murder, after hearing a "pop" and finding her husband shot, she observed three men fleeing the funeral home. One of the three men, whom Ms. Rezem identified as defendant, briefly lingered behind, and pointed a gun at her. Ms. Rezem stated she looked defendant in the eyes for three to four seconds from a distance of eighteen feet, before he turned and fled with the others, whom she did not see.

A-1403-18T1

Defendant's former girlfriend, Barbara Hammed, also testified against him. Hammed testified that defendant had confessed his involvement in the murder and even showed her his means of entry into the funeral home. Hammed further identified the murder weapon as belonging to defendant and testified that defendant had shown her a pair of handcuffs in his vehicle on one occasion. The perpetrators had used handcuffs to restrain Mr. Rezem before shooting him. The State also produced a recording, obtained using a judge-sanctioned wiretap, of defendant telling Hammed over the phone, "that guy in the funeral home, that was the topper."

Another witness, Anthony Coppolla, testified that one week before the murder, defendant solicited his cooperation in an armed robbery and that afterwards, defendant informed him it had gone poorly because the occupants had been found at home. Defendant also admitted various details of the crime to Coppolla as well as his financial motive for the crime and his intent to change his hairstyle to avoid being linked to a police composite of the perpetrator.

At trial, defendant claimed Hammed fabricated her testimony as revenge after discovering defendant was in another relationship. He also explained that he had told Hammed he was involved in the crime, but had only done so to

3

impress her. Both defendant and his wife testified that they were together at a gas station and then eating lunch at the time the crime occurred.

At the conclusion of the trial, in March of 1981, the jury convicted defendant of seven charges, including murder and attempted robbery. On May 18, 1981, the trial court sentenced defendant to life in prison with an additional concurrent sentence. Defendant was released on parole on June 26, 2018.

Since 1981, defendant has made repeated attempts to vacate his conviction. In 2013, we reviewed defendant's then-latest application for post-conviction relief (PCR), and in affirming the trial court's denial of his application, we noted the lengthy procedural history of defendant's attempts to obtain PCR. See State v. Pratola, No. A-3729-10T4 (App. Div. July 31, 2013) (slip op. at 1-3). We need not recount all of defendant's attempts at post-conviction relief here, beyond what is relevant to this appeal.

In 2007, defendant filed his initial motion for DNA testing under N.J.S.A. 2A:84A-32a. On April 13, 2009, Judge Robert Gardner granted the motion and issued an order compelling the State to produce evidence and submit it for DNA testing. Judge Gardner found defendant's application met all the required elements to compel DNA testing under N.J.S.A. 2A:84A-32a and ordered

various items of physical evidence recovered from police storage and sent to Orchid Cellmark Laboratory (Cellmark) in Dallas, Texas.

On April 29, 2009, before any evidence was submitted to Cellmark, defendant sent a letter to Judge Gardner requesting the order be amended to change the testing laboratory from Cellmark to National Medical Service in Pennsylvania, citing concerns over shipping the evidence to Dallas. The State sent a letter objecting to defendant's request and suggesting it would consent to sending the evidence to either the New Jersey State Police (NJSP) Forensic Science Laboratory or to Bode Technology Group in Virginia if defendant remained opposed to Cellmark as the testing lab. However, on May 5, 2009, defendant consented to sending the evidence to Cellmark, pursuant to the original order.

On May 3, 2010, Cellmark sent the parties a report detailing the results of the DNA testing. It reported that three pieces of evidence produced DNA profiles: L-brackets, broken glass, and tape on the broken glass, all recovered from a broken window identified as the perpetrator's point of entry into the Rezem Funeral Home. The DNA profiles from all three items were "a mixture consistent with at least two individuals, including at least one unknown male." With respect to the DNA found on the L-brackets and broken glass, the victim,

Mr. Rezem, and defendant were excluded as possible contributors. With respect to the tape, Mr. Rezem was excluded, but no determination could be made as to whether defendant was a possible contributor.

Upon receipt of the lab report, defendant sought to have the DNA profiles submitted to CODIS, the national DNA databased maintained by the Federal Bureau of Investigation, to see whether the DNA profiles matched with any offenders in the CODIS database, who could then be identified as the true perpetrators of Mr. Rezem's murder and thus exonerate defendant. The State opposed this request, indicating the data obtained from Cellmark could not be submitted to the CODIS database because Cellmark did not meet the standards required by National DNA Index System (NDIS) rules and because the swabbing contained DNA from at least three individuals, and mixtures of DNA from more than two individuals could not be entered into the CODIS database. According to the State, DNA mixtures of more than two individuals could only be compared with specific target suspects.

Consequently, on May 18, 2010, defendant requested Judge Gardner order a comparison of the entry-point DNA profiles with Reginald Curry, a suspect in several local crimes at the time of the murder, as well as with John DeRosa and Anthony Coppolla, other suspects in defendant's case. Judge Gardner ordered

6

DeRosa and Curry to submit to a buccal swab, and after testing their submissions, Cellmark determined the DNA comparison excluded both DeRosa and Curry as matches to the DNA profiles obtained from the entry-point evidence. Because Coppolla was deceased at this point, defendant hoped to obtain a sample of Coppolla's daughter's DNA. However, it appears no sample from Coppolla's daughter was ever obtained, since at that time, defendant's attorney moved to withdraw defendant's DNA-related requests for relief, without prejudice, so she could refile following an opportunity to deal with personal issues and perform additional investigation. Judge Gardner granted her motion.

On November 9, 2015, the New Jersey legislature amended N.J.S.A. 2A:84A-32a, adding section subsection (l), which provides in part:

> If evidence tested at a non-NDIS-participating laboratory pursuant to this section reveals a DNA profile that is not that of the eligible person or the victim, the court shall direct the prosecuting agency appearing on the motion to request that the New Jersey State Police Office of Forensic Services DNA Laboratory or other NDIS-participating laboratory involved in the matter submit the profile to CODIS, if the requirements and prerequisites for acceptance and submission are met, to determine whether it matches a DNA profile of a known individual or a DNA profile from an unsolved crime.

In light of this amendment, on April 24, 2017, defendant filed an application to reopen his motion for DNA submission to CODIS. On June 20, 2017, he refiled the motion, evidently because the court did not receive his initial motion. Judge Mark Ali heard defendant's motion on February 5, 2018 and the following day, ordered the Office of the Attorney General to direct the NJSP Office of Forensic Services DNA Laboratory to submit the DNA profiles obtained by Cellmark to CODIS to search for matches in the index.

NJSP refused to comply with the court's order, on the basis that Cellmark, rather than the State Police laboratory, tested the DNA profiles and because the policies and procedures of Cellmark did not comply with the necessary requirements for submission to CODIS. The State adopted the NJSP's position and claimed profiles could not be submitted to CODIS because CODIS would not accept them. The State also implied defendant was at fault for rendering the profiles unacceptable by arguing that defendant knew the policies and procedures of Cellmark were non-compliant and knew the risks associated with testing at Cellmark, yet agreed to send the evidence for testing at a non-compliant lab. On May 14, 2018, the CODIS State Administrator sent Judge Ali a letter explaining that the DNA profiles generated by Cellmark failed to meet

the requirements for submission to CODIS, therefore, the profiles could not be uploaded.

Judge Ali heard arguments on defendant's motion for a new trial based on newly discovered evidence on August 17, 2018. He also considered whether the DNA profiles provided by Cellmark could be submitted to CODIS.

At the motion hearing, defendant maintained that, since the DNA profiles obtained from the entry-point evidence excluded him as a contributor, submission to CODIS was necessary because the profiles might match to a known offender, which would cast doubt on defendant's identity as the murderer and therefore, warrant a new trial. Defendant also argued Judge Gardner's 2009 order to test the entry-point evidence bound Judge Ali to order the DNA profiles be submitted to CODIS. The State responded that Judge Gardner's order was just that, an order to test DNA, which Cellmark tested in compliance with that order. Additionally, the State maintained it was impossible to upload the Cellmark profiles to CODIS, but argued even if it were possible, the results would not warrant a new trial because "there is no possible outcome of that test that would exculpate [defendant]."

After hearing the parties' arguments, Judge Ali denied defendant's motion to compel submission of DNA evidence to CODIS. In his oral decision, Judge

Ali noted that to compel DNA testing under N.J.S.A. 2A:84A-32a, a defendant must satisfy eight statutory prerequisite. The judge found defendant failed to meet the fifth prerequisite, which required defendant show "the requested DNA testing result would raise a reasonable probability that if the results were favorable to the defendant, a motion for a new trial based upon newly discovered evidence would be granted." N.J.S.A. 2A:84A-32a(d)(5). Judge Ali determined that even if the DNA profile matched with Anthony Coppolla, who testified against defendant at his trial, the State's evidence would remain strong enough to convict defendant beyond a reasonable doubt, even without Coppolla's testimony.

On appeal, defendant argues:

> THE COURT ERRED IN DENYING DEFENDANT'S MOTION TO UPLOAD THE DNA PROFILES PROVIDED BY CELLMARK INTO CODIS, THEREBY VIOLATING DEFENDANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL, INCLUDING THE RIGHT TO PRESENT A DEFENSE.

In a supplemental pro se brief, defendant also raises the following arguments:

> POINT ONE
>
> IN 2015 FORMER GOVERNOR CHRISTIE ORDERED ALL PERSON THAT HAVE (DNA) IN THEIR CASE HAVE THE RIGHT TO HAVE THERE

(DNA) SENT TO STATE & FEDERAL CODIS FOR A MATCH[;]

. . . .

POINT TWO

ON FEBRUARY 24, 2010, DEFENDANT PRATOLA APPEARED IN COURT BEFORE JUDGE ROBERT GARDNER, J.S.C. IN ESSEX COUNTY FOR A CONFERENCE HEARING ON THE (DNA) THAT WAS FOUND AT THE SCENE OF THE CRIME ON JANUARY 11, 1979[.]

N.J.S.A. 2A:84A-32a imposes certain requirements upon a defendant who seeks to have DNA testing conducted after he has been convicted of a crime. The applicable portion of the statute in this respect is subsection (d), which provides as follows:

The court shall not grant the motion for DNA testing unless, after conducting a hearing, it determines that all of the following have been established:

(1) the evidence to be tested is available and in a condition that would permit the DNA testing that is requested in the motion;

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced or altered in any material aspect;

11

(3) the identity of the defendant was a significant issue in the case;

(4) the eligible person has made a prima facie showing that the evidence sought to be tested is material to the issue of the eligible person's identity as the offender;

(5) the requested DNA testing result would raise a reasonable probability that if the results were favorable to the defendant, a motion for a new trial based upon newly discovered evidence would be granted. The court in its discretion may consider any evidence whether or not it was introduced at trial;

(6) the evidence sought to be tested meets either of the following conditions:

> (a) it was not tested previously;

> (b) it was tested previously, but the requested DNA test would provide results that are reasonably more discriminating and probative of the identity of the offender or have a reasonable probability of contradicting prior test results;

(7) the testing requested employs a method generally accepted within the relevant scientific community; and

(8) the motion is not made solely for the purpose of delay.

12

[N.J.S.A. 2A:84A-32a(d) (emphasis added).]

Significantly, the statute does not compel DNA testing to be performed by the State just because such testing might not be inconvenient or burdensome. Instead, the statute directs that the court "shall not grant" a motion to obtain such testing unless "all of" the elements of subsections (d)(1) through (8) have been satisfied. N.J.S.A. 2A:84A-32a(d). In many instances, as here, the pivotal factor lies under subsection (d)(5), i.e., whether a new trial would be granted if the DNA results turn out to be "favorable" to the defense. See, e.g., State v. Peterson, 364 N.J. Super. 387, 394-97 (App. Div. 2003).

As we noted in Peterson:

> [T]here may be a variety of 'favorable' results of DNA testing, some of which would not raise a sufficient question concerning the integrity of the jury verdict to require a new trial, but others of which would raise such serious doubt concerning the fairness of the trial and a convicted person's guilt that a new trial would be required.
>
> [Id. at 397.]

The court "should postulate whatever realistically possible test results would be most favorable to defendant in determining whether he has established that 'favorable' DNA testing 'would raise a reasonable probability [that] a motion for new trial based upon newly discovered evidence would be granted[.]'" Ibid.

(quoting N.J.S.A. 2A:84A-32a(d)(5)); see also State v. DeMarco, 387 N.J. Super. 506, 513-14 (App. Div. 2006) (applying the "reasonable probability" standard); State v. Reldan, 373 N.J. Super. 396, 404 (App. Div. 2004) (same).

Having considered the arguments advanced on appeal, in light of the record and the applicable law, we reject defendant's arguments and claims of error. We concur with Judge Ali's conclusion that defendant failed to "meet the 'reasonable probability' standard" required by N.J.S.A. 2A:84A-32a(d)(5) to compel submission of DNA evidence to CODIS.

There would be little to no doubt cast on defendant's conviction even if the DNA profiles were submitted to CODIS and matched with another individual. At defendant's trial, the State presented evidence showing defendant was one of three accomplices who attempted to burglarize the victim's place of business. The two other perpetrators were never identified, and one or both of those individuals' DNA could match the profiles found on the entry-point evidence. However, such a match would not exonerate defendant as his conviction did not depend on him being identified as the individual who literally broke the window to enter the funeral home. Rather, the basis for defendant's conviction was Ms. Rezem's eyewitness identification of defendant at the crime scene, the testimony of two of defendant's acquaintances who claimed defendant

confessed his involvement in the robbery and murder to them, and a recording of defendant stating "that guy in the funeral home, that was the topper." Thus, determining the identity of other persons who potentially conducted the physical breaking into the funeral home would be immaterial to the State's proof of defendant's involvement and would not in any way rule out that defendant was the one who shot Mr. Rezem.

Likewise, as Judge Ali explained, even if submission of the DNA profiles to CODIS revealed the DNA of one of the State's witnesses, Anthony Coppolla, to be on the entry-point evidence, such a match would not materially undermine the proofs of defendant's guilt. Both Ms. Rezem's testimony describing defendant pointing a gun at her immediately after shooting her husband and Hammed's testimony recounting defendant's admissions to her and connecting defendant to the murder weapon and handcuffs amounted to overwhelming evidence of defendant's guilt. Neither the omission of Coppolla's testimony nor the addition of evidence suggesting Coppolla was one of the three accomplices involved in the robbery would change the jury's verdict in defendant's trial, given the other evidence implicating defendant and the fact that defendant's accomplices were never identified.

Any match of the entry-point DNA profiles to an offender in CODIS would not raise a sufficient question concerning the integrity of the jury verdict and therefore would not raise a reasonable probability that a motion for a new trial would be granted based upon the CODIS results constituting newly discovered evidence.

We find no basis exists to interfere with Judge Ali's denial of defendant's motion to submit the Cellmark DNA profiles to CODIS. Any of defendant's arguments not specifically addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION